677 So.2d 1091 (1996)
Walter PENA
v.
Roy J. FANN, State Farm Mutual Automobile Insurance Company and James T. Williams, M.D. an Orthopaedic Clinic.
Nos. 95-C-2709, 96-CA-1043.
Court of Appeal of Louisiana, Fourth Circuit.
July 3, 1996.
*1092 Richard C. Trahant, Jack E. Morris, Molaison, Price & Loeb, L.L.P., Gretna, for Plaintiff.
J. Michael Daly, Jr., Law Offices of Robert E. Birtel, Metairie, for James Williams, M.D.
Before CIACCIO, JONES and LANDRIEU, JJ.
LANDRIEU, Judge.
Walter Pena filed suit against Roy Fann, State Farm Mutual Automobile Insurance Company, and Dr. James Williams, alleging that he was injured in a collision between his vehicle and that of Fann, which was insured by State Farm. Pena further alleged that in compliance with the request of a State Farm adjuster, he underwent an independent medical examination (IME) performed by Dr. Williams, who reported to State Farm that there was essentially nothing wrong with plaintiff and that there were no recommendations for additional orthopedic treatment or diagnostic study. Pena asserted his neck pain got worse and that he had to have surgery due to a severe rotary subluxation caused by the accident and which was not properly diagnosed or treated by Dr. Williams. He further alleged that Dr. Williams was liable to him for failing to properly diagnose and treat him and in failing to meet the requisite standard of care of orthopedic doctors in the community. Pena also stated in his petition that Dr. Williams was employed by State Farm which was in turn vicariously liable under respondeat superior and that a doctor-patient relationship did not exist between him and Dr. Williams, making a medical review panel unnecessary. Pena filed an amended petition that alleged Dr. Williams was negligent in failing to exercise reasonable care to report the findings of the IME in a manner which accurately reflected his condition and in failing to warn plaintiff of the foreseeable risk that he would suffer permanent disability as a result of untreated rotary subluxation.
Dr. Williams filed exceptions of prematurity and no cause of action. He argued that because plaintiff's claim was governed by the Medical Malpractice Act (Act), it had to first be submitted to a medical review panel before suit could be filed. Alternatively, Dr. Williams argued that plaintiff had no cause of action assuming there was no doctor-patient relationship between him and plaintiff. The trial court denied both exceptions.
On application for supervisory writs, this Court denied writs as it pertained to Dr. Williams' exception of no cause of action. However, the Court granted that part of the application for supervisory writs relative to Dr. Williams' exception of prematurity, finding that the claim is governed by the Medical Malpractice Act and must first be submitted to a medical review panel. Accordingly, the judgment of the trial court was reversed and the suit against James T. Williams, M.D., dismissed without prejudice.
Upon Pena's application, the Louisiana Supreme Court granted writs and remanded the matter to this Court for briefing, argument, and opinion. Accordingly, the matter was docketed for an appeal and oral argument was scheduled.
DISCUSSION
The issue before us is whether the Medical Malpractice Act pertains to cases arising out of an IME examination. La.Rev.Stat. ann. 40:1299.41(A)(8) (West 1992) defines malpractice as any unintentional tort or any breach of contract based on health care or professional services rendered, or which should *1093 have been rendered, by a health care provider to a patient. (emphasis added). A tort is defined as any breach of duty or any negligent act or omission proximately causing injury or damage to another. La.Rev.Stat. Ann. 40:1299.41(A)(7) (West 1992). Health care is defined as any act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement. La.Rev.Stat. Ann. 40:1299.41(A)(9) (West 1992). A patient is a natural person who receives, or should have received, health care from a licensed health care provider, under contract, either express or implied. La.Rev.Stat.Ann. 40:1299.41(A)(3) (West 1992).
In ruling that the claim in this case did not have to be submitted to a medical review panel, the trial court relied on Hutchinson v. Patel, 93-2156 (La. 5/23/94), 637 So.2d 415. That case, however, pertained to a claim where the plaintiff sued her husband's psychiatrist for failing to warn her or to take measures to protect her from her husband. In holding that the Act did not apply because there was no doctor-patient relationship between the plaintiff and her husband's psychiatrist, the Louisiana Supreme court stated:
We find apparent in the Act's definition of "patient," "tort," "health care," and "malpractice" the legislature's recognition of the traditional rule of law allowing recovery for medical malpractice only where a physician-patient relationship exists as the result of an express or implied contract and where the physician breaches either the contract or his or her professional duty to the patient. (Citations omitted) (Emphasis in original).

Id. at p. 6-7, 637 So.2d at 421.
Unlike Hutchinson, the matter before us involves a direct relationship between the plaintiff and the defendant-doctor. In a similar case, where a widow and child sued a company doctor for failing to diagnose the decedent's lung cancer during an annual employment physical, the U.S. Fifth Circuit reasoned:
We live in an age in which the drive for an increasingly productive workforce has led employers increasingly to require that employees subject their bodies (and minds) to inspection in order to obtain or maintain employment. See Rothstein, Employee Selection Based on Susceptibility to Occupational Illness, 81 Mich.L.Rev. 1379 (1983) (common procedures include blood tests, urinalysis, pulmonary function tests, and x-rays). In placing oneself in the hands of a person held out to the world as skilled in a medical profession, albeit at the request of one's employer, one justifiably has the reasonable expectation that the expert will warn of "any incidental dangers of which he is cognizant due to his peculiar knowledge of his specialization." American Mfrs. Mut. Ins. Co. v. United Gas Corp., 159 So.2d 592, 595 (La.App.1964) [sic]. (Footnote omitted).
Green v. Walker, 910 F.2d 291 (5th Cir.1990), Id. at 295-296.
The Court further stated that when an individual was required as a condition of employment to submit to an examination, that examination created a relationship between the examining physician and the examinee, at least to the extent of the tests conducted. That relationship imposed upon the examining physician a duty to conduct the requested tests and diagnose the results thereof, exercising the level of care consistent with the doctor's professional training and expertise, and to take reasonable steps to make information timely available to the examinee of any findings that posed an imminent danger to the examinee's physical or mental well-being. We agree.
Pena's claims fall entirely within the definition of malpractice set forth in the Act since the complained-of acts and omissions deal entirely with the allegedly improper diagnosis and treatment of an injury. This distinguishes the present case from Hutchinson in which the central issue was whether the doctor's failure to warn a non-patient about a patient's dangerousness constituted malpractice under the Act as being based on the doctor's treatment or failure to treat his patient. Pena is trying to have it both ways in arguing that he was not a patient of Dr. Williams but that the doctor had a duty to properly diagnose and treat him. If, as in *1094 Green v. Walker, there were a relationship formed between plaintiff and Dr. Williams as a result of his performing the IME, then the allegations against the doctor fall within the Act. Hence, plaintiff's failure to submit his claim to a medical review panel makes it premature and the trial court erred in failing to grant Dr. Williams' exception of prematurity.
Because the claim against Dr. Williams is premature and should be submitted to a medical review panel, the trial court's ruling dismissing defendant's exception of no cause of action is vacated. The judgment of the trial court dismissing defendant's exception of prematurity is reversed and, in accordance with the mandate of La.Code Civ.Proc. art 933, the suit as it pertains to Dr. Williams is dismissed without prejudice.
VACATED IN PART; REVERSED IN PART.