[NORRIS, Judge,
dissenting.
I respectfully dissent. The instant petition asserts procedural violations of the State *1229 Drug Testing Law, R.S. 49:1001-1015, and not substantive medical malpractice claims. Overall, I do not see what purpose a medical review panel would serve in this case; there is no standard of care to be determined. In particular, there are several crucial points which bring this claim out of the ambit of the Medical Malpractice Act, R.S. 40:1299.41, et seq.
(1) Ms. Price was not a patient of Dr. Mazzanti’s or of Bossier Medical Center’s with respect to the drug test. Medical malpractice is predicated on a relationship between a health care provider and a patient. R.S. 40:1299.41 A(8); Hutchinson v. Patel, 93-2156 (La. 5/23/94), 637 So.2d 415. In deposition Dr. Mazzanti stated that he did not consider Ms. Price his patient or feel that he rendered her medical care. R. p. 70. Counsel for the defendants even stated at the hearing, “We acknowledge she wasn’t Dr. Mazzanti’s patient.” R. p. 149. On a factual basis the record does not meet the critical requirement that Ms. Price be a patient of the defendants’.
Admittedly, pathologists and other “downstream” physicians who lack a direct physician-patient relationship with the persons whose x-rays or biopsies they examine may nevertheless be subject to the Act. Knepper v. State, 359 So.2d 1127 (La.App. 3d Cir.1978). However, the pathologist in Knepper performed services at the request of a doctor who was serving as the plaintiffs physician; this meets the Act’s requirement of an express or implied contract between patient and physician. The instant record does not.
(2) Dr. Mazzanti’s services were not “health care” or “treatment” as required to bring his conduct under the Act, R.S. 40:1299.41 A(9), but merely a test or forensic procedure unrelated to health care. His function was essentially the same as that of the blood bank in Doe v. Medical Center of La., 612 So.2d 1050 (La.App. 4th Cir.), writ denied 613 So.2d 1005 (1993), which was found not to include a component of health care.
Again, certain forensic procedures (x-rays, IV administration) may fall under the Act. Knepper, supra; Cudges v. Our Lady of Lourdes Hosp., 514 So.2d 195 (La.App. 3d Cir.1987). And yet the services described in those cases were obviously ordered by the physician and related to his efforts to diagnose, treat and ultimately cure the patient; in short, they were a component of health care. Such is not the case with a drug test ordered by the employer solely to determine the presence of CDS in an employee’s system. This test neither prescribes nor contemplates any health care or treatment on the MRO’s part once the test is complete.
In this regard I also disagree with the-majority’s assertion that the urine test was given at the employer’s “suggestion,” as though it were optional. According to the petition Ms. Price was “directed” to the lab and “directed” to take the test. To characterize this as something she was free to undergo, or free forgo, is .to be blind to the realities of drug testing in today’s work place. See Elliott v. Laboratory Specialists Inc., 588 So.2d 175 (La.App. 5th Cir.1991), writ denied 592 So.2d 415 (1992).
(3)The majority’s extremely brief citation to Green v. Walker, 910 F.2d 291 (5th Cir.1990), and to Pena v. Fann, 95-2709 (La.App. 4th Cir. 7/3/96), 677 So.2d 1091, does not transmute this into a malpractice ease. In Green, the Fifth Circuit apparently acknowledged some relationship between an examining physician and his examinee in periodic, employment-based physicals; however, the court studiously avoided calling it a physician-patient relationship. In Pena, the court’s sparse discussion is derived primarily from a quotation from Green, and does not in my view address the issue adequately. The sounder, better-reasoned rule is that a physician-patient relationship is not formed when a doctor (¡examines a person solely to render an evaluation for an employer or potential employer. Thomas v. Kenton, 425 So.2d 396 (La.App. 3d Cir.1982); see also Hoover v. Williamson, 236 Md. 250, 203 A.2d 861 (1964); Heller v. Peekskill Community Hosp., 198 A.D.2d 265, 603 N.Y.S.2d 548 (2d Dept.1993).[3] Such a relationship creates *1230 a non-contractual duty based on La. C.C. art. 2315. Elliott v. Laboratory Specialists Inc., supra.
(4) The Medical Malpractice Act derogates from the general rights of tort victims and must be strictly construed against coverage. Hutchinson v. Patel, at p. 5, 637 So.2d at 420, and citations therein. Statutory provisions like the Drug Testing Law, which only peripherally or arguably affect health care, should not be construed to bring the conduct under malpractice in the absence of clear legislative intent to do so. Id. I see nothing in the Drug Testing Law evidencing an intent to exclude the tested employee from her tort rights and bring her under the Malpractice Act. I believe the majority has erred in so doing.
For these reasons I respectfully dissent.

. An important exception to this rule can be admitted when the examining doctor causes further injury by either affirmatively treating the *1230 patient or affirmatively advising her as to a course of treatment.