693 So.2d 1169 (1997)
Marla K. PRICE and Robert Price
v.
CITY OF BOSSIER CITY, d/b/a Bossier Medical Center and Gary Mazzanti, M.D.
No. 96-C-2408.
Supreme Court of Louisiana.
May 20, 1997.
*1170 Steven Curtis Mitchell, Shreveport, Tracy Ann Burch, Shreveport, Jones, Mitchell, Burch, Shreveport, for Applicant.
Randall Louis Champagne, Lafayette, Sandra P. Haynie, Shreveport, Watson, Blanche, Wilson & Posner, Baton Rouge, Gordon E. Rountree, Rountree, Cox, Guin & Achee, Shreveport, for Respondent.
VICTORY, Justice.
We granted a writ in this case to determine whether a suit against a hospital and a doctor for alleged misrepresentation of drug tests results, ordered at the behest of the plaintiff's employer and resulting in the termination of plaintiff's employment, falls under the Medical Malpractice Act. Finding that it does not, we reverse the judgment of the court of appeal.

FACTS AND PROCEDURAL HISTORY
On February 16, 1995, Marla Price ("Price"), an employee of Horseshoe Casino, slipped and fell at work and injured her arm. The next day, she reported the accident to her employer who advised her to go to Bossier Medical Center for treatment. She reported to the emergency room at Bossier Medical Center and was examined by Dr. Bruner, the ER physician on duty. Dr. Bruner treated her arm injuries with a sling and medication, and then told her that she must go to the lab for a drug screen. The drug screen was required by her employer for all employees who were injured at work.
Price went to the lab at Bossier Medical Center and filled out a consent form for the drug screen. On the form, she indicated that she had recently used a pain reliever and nasal spray and had eaten poppy seed dressing shortly before the test. The drug testing samples were obtained by the lab, analyzed, then sent off to the Mayo Clinic for further analysis. The Mayo Clinic report indicated that Price tested positive for morphine, with *1171 a test result of 434 ng/ml which is over the legal cutoff of 300 ng/ml. The Mayo Clinic report cautioned that "[p]resence of morphine at low concentration (

Dr. Gary Mazzanti was Bossier Medical Center's Medical Review Officer, in charge of reviewing and interpreting the results of the drug test under the National Institute on Drug Abuse Guidelines ("NIDA"), adopted by Louisiana in La.R.S. 49:1005 et seq. The NIDA Guidelines specify collection and testing procedures in order to assure accurate and unadulterated tests, set out specific requirements for reviewing and interpreting positive test results, and require that a Medical Review Officer review the drug tests results prior to reporting the results to the proper party.
Dr. Mazzanti reviewed the results and reported the drug screen results as positive to Horseshoe. Horseshoe then made the decision to terminate Price's employment.
Price and her husband filed suit in the 26th Judicial District Court against Bossier Medical Center and Dr. Mazzanti claiming that the defendants acted negligently as follows: failing to perform the drug testing procedure as required by law; failing to correctly collect the urine sample; failing to properly test the sample; failing to properly perform the function of Medical Review Officer; ignoring or failing to consider extrinsic factors which could cause a false positive result; abandoning the duty placed on the Medical Review Officer; failing to completely report all findings and tests; ignoring the warning given by the Mayo lab; and, other acts of negligence to be proven at trial.
Defendants filed an exception of prematurity under La.R.S. 40:1299.47B(1)(a)(I), claiming that the plaintiffs' petition stated a cause of action under the Medical Malpractice Act and that it must be presented to medical review panel. The district court granted the exception and dismissed the plaintiffs' suit without prejudice. The court of appeal, with Judge Norris dissenting, affirmed, holding that "[a]lthough Horseshoe initiated the contact between Price and Dr. Mazzanti, she became a patient receiving, and expecting, professional services to be provided by this physician in an exercise of his best judgment, reasonable care, and due diligence." Price v. City of Bossier, d/b/a Bossier Medical Center, Gary Mazzanti, M.D., 28,677-CA (La. App.9/5/96), 680 So.2d 1226.[1] We granted a *1172 writ to determine the correctness of this ruling. 96-C-2408 (La.12/13/96), 692 So.2d 363.

DISCUSSION
Under the Medical Malpractice Act (the "Act"), no action for malpractice against a qualified health care provider or his insurer may be commenced in a court of law before the complaint has been presented to a medical review panel. La.R.S. 40:1299.47[2]. "The Act applies solely to claims `arising from medical malpractice.'" Hutchinson v. Patel, 637 So.2d 415, 419 (La.1994) (citing La. R.S. 40:1299.41(I) and Sewell v. Doctors Hosp., 600 So.2d 577, 578 (La.1992)).
The Act defines "malpractice" as follows:
(8) "Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient. (Emphasis added.)
La.R.S. 40:1299.41(A). It is undisputed that Dr. Mazzanti and Bossier Medical Center were qualified health care providers under the Act. It is also undisputed that Dr. Mazzanti was performing "professional services" in interpreting the drug screen results. The crucial terms in this case are "patient," "tort," and "health care" which are defined as follows:
(3) "Patient" means a natural person who receives or should have received health care from a licensed health care provider, under a contract, express or implied.
(7) "Tort" means any breach of duty or any negligent act or omission proximately causing injury or damage to another. The standard of care required of every health care provider, except a hospital, in rendering professional services or health care to a patient, shall be to exercise that degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill.
(9) "Health care" means any act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment or confinement.
La.R.S. 40:1299.41(A).
It should further be noted "that because the Medical Malpractice Act limits the liability of health care providers in derogation of the general rights of tort victims, any ambiguities in the Act should be strictly construed against coverage." Hutchinson, supra at 420 (citing Branch v. Willis-Knighton Med. Ctr., 92-3086, p. 14 (La.4/28/94), 636 So.2d 211, 217; Kelty v. Brumfield, 633 So.2d 1210, 1216 (La.1994); Rodriguez v. Louisiana Med. Mut. Ins. Co., 618 So.2d 390, 394 (La.1993); Galloway v. Baton Rouge Gen. Hosp., 602 So.2d 1003, 1005 (La.1992); Sewell v. Doctors Hosp., 600 So.2d 577, 578 (La.1992)).
Plaintiffs argue that the Act does not govern this case because Price was not a "patient" with regard to the drug screen. We agree. While clearly an act of malpractice can occur in the rendition of professional services, the patient must still be in the process of receiving "health care" from the doctor or hospital when the negligent rendition of professional services occurs. This *1173 means that the act or omission must have occurred "during the patient's medical care, treatment or confinement." La.R.S. 40:1299.41(A)(9). See Cudges v. Our Lady of Lourdes Hospital, 514 So.2d 195 (La.App. 3d Cir.1987) (negligent venepuncture during hospital stay covered under the Act); Austin v. St. Charles General Hospital, 587 So.2d 742 (La.App. 4th Cir.1991), writ denied, 590 So.2d 80 (La.1991) (fall from x-ray table during hospital stay covered under the Act).
At the time of the drug screen, Price was not receiving "medical care," but was only being tested for the presence of drugs, a condition of which Price presumably was already aware. Thus, unlike employment physicals, plaintiff here was not relying upon the physician to inform her of a physical condition of which she was unaware. See Green v. Walker, supra. Further, Dr. Bruner had completed the "treatment" of Price's arm and had released her from the emergency room. Contrary to the situation where a doctor directs a patient to go to the lab for tests relating to the medical condition for which the doctor is treating the patient, Price was directed to go to the lab for the drug screen, not as part of her treatment for her arm, but solely because her employer wanted to know whether she was under the influence of drugs at the time of the accident. See Knepper v. State, 359 So.2d 1127 (La.App. 3d Cir.1978) (Act covered services of pathologist and radiologist performed at the behest of the physician treating plaintiff which related to the condition for which plaintiff was being treated.) Finally, she clearly was not "confined" to Bossier Medical Center at the time of the drug screen. Because Price was not in the process of receiving medical care, was not being treated, and was not confined at the time of the drug screen, she was not receiving "health care" under the Act and therefore does not meet the definition of "patient" as that term is defined in the Act.[3]

CONCLUSION
Accordingly, we hold that where an employee is terminated from her employment because a doctor allegedly negligently reported the results of a drug screen ordered by the employer, the case is not covered by the Medical Malpractice Act and needs not be initially submitted to a medical review panel because the employee is not a "patient" as defined by the Act.

DECREE
Accordingly, for the reasons stated herein, the judgment of the court of appeal is reversed and the case is remanded to the district court for trial.
REVERSED AND REMANDED.
LEMMON, J., concurs and assigns reasons.
LEMMON, Justice, concurring.
The Medical Malpractice Act authorizes recovery, in a specified limited amount, "for all malpractice claims for injuries to or death of a patient...." La.Rev.Stat. 40: 1299.42B(1).
In my view, economic injuries, at least in the absence of accompanying physical injuries, do not fall under the Act.
NOTES
[1] The court of appeal concluded that Dr. Mazzanti furnished "professional services" to Price and that the legislature "intended inclusion of claims arising out of both treatment and professional services rendered on behalf of a patient." 680 So.2d at 1228. Relying on Pena v. Fann, 95-2709 (La.App. 4th Cir. 7/3/96), 677 So.2d 1091, writ denied, 96-1910 (La.11/1/96), 681 So.2d 1261, and Green v. Walker, 910 F.2d 291 (5th Cir.1990), the court of appeal found that Price "became a patient" even though Horseshoe initiated the contact between Price and Dr. Mazzanti. Id.

In Green v. Walker, where a company doctor failed to diagnose and report plaintiff's lung cancer on his annual employment physical, the Fifth Circuit held:
when an individual is required, as a condition of future or continued employment, to submit to a medical examination, that examination creates a relationship between the examining physician and the examinee, at least to the extent of the tests conducted. This relationship imposes upon the examining physician a duty to conduct the requested tests and diagnose the results thereof, exercising the level of care consistent with the doctor's professional training and expertise, and to take reasonable steps to make information available timely to the examinee of any findings that pose an imminent danger to the examinee's physical or mental well-being. To impose a duty upon the doctor who performs such tests to do so in accordance with the degree of care expected of his/her profession for the benefit of the employee-examinee, as well as the employer, is fully consistent with the very essence of Civil Code article 2315.
Id. In Pena, the fourth circuit relied on Green in holding that the Act applied to a case arising out of an independent medical exam ("IME") carried out at the request of the insurer where the doctor performing the IME failed to properly diagnose and treat the plaintiff's neck pain resulting in further medical problems. 677 So.2d at 1093-1094.
Green and Pena are distinguishable from the case at bar in that in those cases, the doctors performed medical examinations and reported findings that were erroneous and failed to warn the plaintiffs of findings that impacted on the plaintiffs' medical conditions. To the contrary, a drug screen cannot be analogized to a medical exam where the physician is looking for the presence of certain medical conditions. In addition, this is not a case where the doctor read the results of a drug screen and learned that the person tested had a medical condition "which posed an imminent danger to the examinee's physical or mental well-being" as in Green and Pena.
[2] La.R.S. 40:1299.41(E)(1), setting forth the requirements for filing a malpractice claim, states that "[s]ubject to R.S. 40:1299.47 (requiring that a medical review panel review all malpractice claims covered by the Act), a person having a claim under this Part for bodily injuries to or death of a patient on account of malpractice may file a complaint in any court of law having requisite jurisdiction."
[3] Defendants also argue that the exception of prematurity was properly granted because plaintiffs' petition sets forth specific allegations that Dr. Mazzanti breached the standard of care required of a health care provider in rendering professional services and thus the case falls under the Act. While it is true that the allegations of plaintiffs' petition do set forth acts of negligence by a doctor, each allegation is also a violation of specific requirements of the NIDA Guidelines. Further, as stated in this opinion, Price was not a patient as required by the Act.