pAMY, Judge.
In this appeal from the trial court’s grant of the defendant’s exception of prematurity, the plaintiff contends that his claim is not governed by Louisiana’s Medical Malpractice Act, La.R.S. 40:1299.41, et seq., and, hence, that the trial court erred in ruling that he must first present his claim to a medical review panel as required by the statute. Finding no error in that ruling, we affirm.
*530 Factual and Procedural Background
The factual scenario from which this case arises was stipulated to by the parties and is, therefore, not in dispute. The plaintiff, Jimmy Simmons, suffered a serious spinal injury in 1975. He was employed with Condea Vista (CV) at that time, and, as a result of his injury, he became “frozen” in his position as first control man with CV pursuant to company policy! As a result, he was ineligible for promotion. ^However, in 1996, CV instituted the practice of “cross-training”[1] its employees. Pursuant to that practice, Jim Ely, CV’s Human Resources Administrator, wanted Plaintiff to begin training for the “top operator” position. Plaintiff, however, indicated that he was physically incapable of performing the job, to which Mr. Ely responded that Plaintiff would not be allowed to remain “frozen” in his position unless he provided medical documentation regarding his physical limitations. Plaintiff then scheduled an appointment with Dr. Dale Bernauer, an orthopedist. However, prior to that appointment, Mr. Ely arranged for Plaintiff to meet with the defendant, Dr. Bonnie Drumwright, which meeting Plaintiff contends was solely for the purpose of obtaining a prescription for a functional capacity evaluation (FCÉ) with Rehab Xcel. It is the appointment with Defendant which serves as the focus of the instant appeal.
On July 3, 1997, Plaintiff filed suit against Defendant in the Fourteenth Judicial District Court, alleging that certain acts and omissions caused him damage. Defendant responded to that petition with an exception of prematurity, urging that she “is a qualified and enrolled member of the Louisiana Patient’s Compensation Fund and this matter is therefore governed by the provisions of [La.]R.S. 40:1299.41, et seq.” As such, Defendant submitted that the suit against her was premature. The trial court agreed and sustained Defendant’s dilatory exception of prematurity. Plaintiff has appealed that ruling and assigns as error the following:
The trial court erred when it sustained the Exception of Prematurity. Jimmy Simmons was not a patient of Dr. Bonnie Drumwright and thus was not required to submit his case to a medical review panel.
| (¡Discussion
In brief, Plaintiff cites the recent supreme court case of Price v. Bossier City, 96-2408 (La.5/20/97); 693 So.2d 1169, which case he urges supports his position that he has never been Defendant’s patient, as she provided him with neither medical care nor treatment. He urges that “[t]he sole purpose of Dr. Drumwright reviewing and testing Mr. Simmons, was to determine whether he could perform the job of top operator.” He further asserts that he “was not relying upon [Defendant] to inform him of his physical condition.” Conversely, Defendant contends that she provided “health care” to Plaintiff in the following manner:
[By] evaluating him, conducting a physical examination, taking a history, reviewing prior medical records, ordering by prescription a functional capacity evaluation with specific limitations, consulting with the vocational rehab people concerning those restrictions on the test, reviewing the results of that test, and advising the patient and his employer of her expert medical opinion concerning his ability to perform certain jobs.
Pursuant to La.R.S. 40:1299.47,[2] all claims for malpractice against a qualified health *531 care provider must be submitted to a medical review panel prior to the institution of suit in court. “Malpractice” is defined in La.R.S. 40:1299.41 A(8) as follows:
[/‘Malpractice” means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient.
As in Price, the terms critical to this appeal are “patient” and “health care.” “Patient” is defined in La.R.S. 40:1299.41 A(3) as follows:
[A] natural person who receives or should have received health care from a licensed health care provider, under a contract, express or implied.
Additionally, “health care” is defined in La.R.S. 40:1299.41 A(9) in the following manner:
[A]ny act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient’s medical care, treatment or confinement.
In Price, 96-2408 (La.5/20/97); 693 So.2d 1169, the plaintiff instituted suit against a hospital and the doctor who had allegedly misrepresented the results of her drug test to her employer, thereby causing her to be terminated. The supreme court ruled that the plaintiffs suit was not premature, as she was not a “patient” under the Medical Malpractice Act. In that regard, the court reasoned as follows:
At the time of the drug screen, Price was not receiving “medical care,” but was only being tested for the presence of drugs, a condition of which Price presumably was already aware. Thus, unlike employment physicals, plaintiff here was not relying upon the physician to inform her of a physical condition of which she was unaware.... Because Price was not in the process of receiving medical care, was not being treated, and was not confined at the time of the drug screen, she was not receiving “health care” under the Act and therefore does not meet the definition of “patient” as that term is defined in the Act.
Id at pp. 6-7; at 1173 (footnote omitted). In Price, the supreme court distinguished Green v. Walker, 910 F.2d 291 (5th Cir.1990) and Pena v. Fann, 95-2709 (La.App. 4 Cir. 7/3/96); 677 So.2d 1091, writ denied, 96-1910 (La.11/1/96); 681 So.2d 1261. In Green, the issue was whether a physician hired by an employer owed a duty to an employee to perform an employment examination “with due care, consistent with the medical skills he held out to the public, and to report his findings, particularly any finding which appeared to pose a threat to the physical or mental health” of the employee. Green, 910 F.2d at 293. The Fifth Circuit, applying Louisiana law, answered that question affirmatively, holding as follows:
[W]hen an individual is required, as a condition of future or continued employment, to submit to a medical examination, that examination creates a relationship between the examining physician and the examinee, at least to the extent of the tests conducted.... To impose a duty upon the doctor who performs such tests to do so in accordance with the degree of care expected of his/her profession for the benefit of the employee-examinee, as well as the employer, is *532 fully consistent with the very essence of Civil Code article 2815.
Id. at 296. The Pena court relied upon Green in a case involving an independent medical examination (IME). In Pena, the plaintiff alleged that the doctor who performed the IME failed to properly diagnose and treat his orthopedic condition. He urged that, because there was no doctor-patient relationship, he was not required to submit his claim to a medical review panel. The court, however, citing Green, found that “a relationship formed between plaintiff and Dr. Williams as a result of his performing the IME,” and that submission of the claim to a medical review panel was necessary. Pena, 95-2709, p. 4; 677 So.2d at 1094. Accordingly, the court ruled that the plaintiffs suit was premature. Id.
liA-t the hearing on the exception of prematurity, the trial judge, in considering the Price decision and its applicability to the instant matter, stated as follows:
All they did was just do a drug test. It was an objective type thing, and they’re pointing out that this case in Green, that in this case is not where the doctor read, it’s not as if the doctor read them or looked at the drug screen and made some opinion or — and I’m satisfied that this Price case is not authority for this case to force this to a trial without going through a Medical Review Panel, because here this doctor did conduct an examination and did give instructions regarding things to be done, this involved the exercise of her opinion, and I think that under these Green and Pena cases and the distinction that the courts made in Price, Price won’t be applicable....
Upon review, we, too, find the instant case distinguishable from Price, 96-2408; 693 So.2d 1169. While the facts of that case indicate that the physician merely “reviewed the results and reported the drug screen results as positive,” the evidence contained within the record indicates that, here, Defendant’s involvement was greater. Id. at p. 3; at 1171. For example, Defendant’s medical records reveal that she took Plaintiffs medical history. They also reflect that she conducted an examination of Plaintiff and, importantly, she issued a prescription to Rehab Xcel for an FCE, during which examination Plaintiff contends he was injured. Additionally, Defendant interpreted the results of that FCE, opining that, at that time, Plaintiff was “unable to safely perform the job of top operator.” She qualified that opinion, however, by stating that “[i]t seems possible that he could achieve this level of functioning with further conditioning.” We find that, in performing those services, Defendant was involved in rendering “health care” to Plaintiff within the meaning of the Medical Malpractice Act and that Plaintiff is a “patient” under that act. Accordingly, we find no error in the trial court’s ruling that Plaintiffs suit against Defendant is premature.
IvDECREE
For the foregoing reasons, the trial court judgment sustaining Defendant’s dilatory exception of prematurity is sustained. Costs associated with this appeal are assigned to the plaintiff, Jimmy E. Simmons, et ux.
AFFIRMED.

. "Cross-training” is explained in the record as CV’s requirement that its employees be trained and capable of performing more than one job.

. La.R.S. 40:1299.47(A)(1) provides as follows:
All malpractice claims against health care providers covered by this Part, other than claims validly agreed [or submission to a lawfully binding arbitration procedure, shall be reviewed by a medical review panel established as hereinafter provided for in this Section.
*531 Additionally, La.R.S. 40:1299.47(B)(l)(a)(i) states the following:
No action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant’s proposed complaint has been presented to a medical review panel established pursuant to this Section.