Carol MEEKINS, Plaintiff–Appellant,

v.

ST. JOHN'S REGIONAL HEALTH
CENTER, INC., Defendant–
Respondent.

No. 26274.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 21, 2004.

Petition for Rehearing and Transfer
Denied Nov. 12, 2004.

Application for Transfer Denied
Dec. 21, 2004.

Carl E. Smith, Ava, MO, for Appellant.

Jason R. Brown, Lathrop & Gage, L.C., Springfield, MO, for Respondent.

JAMES K. PREWITT, Judge.

On March 19, 2003, Carol Meekins ("Meekins") filed a two-count lawsuit against St. John's Regional Health Center, Inc., ("St.John's"). The first count was for declaratory judgment, and the second count was labeled negligence/res ipsa loquitor. The trial court entered an order dismissing both counts, and Meekins appealed. This Court dismissed that appeal, however, for lack of appellate jurisdiction, finding there was no final judgment because the trial court's order dismissing Counts I and II of the petition had not been denominated as a judgment. Following that dismissal, the trial court entered a judgment finding in favor of St. John's on both counts. In the appeal before us now, with two points relied on, Meekins argues that the trial court erred in granting St. John's motion to dismiss.

## Background

On October 31, 2000, a specimen was collected from Meekins. St. John's performed a drug screen test on that specimen, and in a toxicology report dated November 1, 2000, the specimen showed positive for amphetamine/methamphetamine. On November 2, 2000, Meekins provided another specimen to Cox Toxicology Laboratory ("Cox"). The drug-screen test performed that same day at Cox showed the specimen was negative for amphetamines.

On March 19, 2003, Meekins filed a lawsuit against St. John's. The suit contained two counts, the first of which was for declaratory judgment. Within Count I, Meekins alleged "[t]hat a controversy has arisen between [her and St. John's] in that [Meekins] has never taken any controlled substance in her lifetime including, but not limited to, methamphetamine." Meekins also alleged that St. John's drug screen was not correct and that "in opposition to its results [Meekins] immediately went to [Cox] and submitted to a superior certified toxicology screen." Meekins asked the trial court to declare "that the drug screen performed by [St. John's] ... is incorrect and falsely showed that [Meekins] had methamphetamine in her system[.]"

Count II of Meekins' petition was for negligence/res ipsa loquitor. Within Count II, Meekins alleged that St. John's "had a duty to properly perform and/or use a drug screen test process that was accurate and reliable." Meekins also alleged that St. John's breached that duty and "either improperly performed the drug screen test and/or used an unreliable testing procedure." According to Meekins, "the testing method and performance thereof were under the complete control and direction of [St. John's and] .... as a direct result and proximate result of [St. John's] negligence, [Meekins] has sustained actual damages ... for termination of employment, lost wages, reduced income, medical expenses, pain and suffering, and humiliation."

In its answer, St. John's asserted that both Count I and Count II failed to state a claim upon which relief could be granted and therefore, were subject to dismissal. On July 3, 2003, St. John's filed a motion to dismiss, alleging that, with respect to Count I, the court lacked subjectmatter jurisdiction because the factors necessary for declaratory judgment were not present. With respect to Count II, St. John's argued that it was performing a health care service and, pursuant to § 538.225, RSMo 2000, Meekins was required to have filed a health care affidavit within ninety days of filing her petition. According to St. John's, since Meekins had not filed the affidavit within the requisite time period,

Count II should be dismissed. In the prayer of the motion, St. John's asked the court to "dismiss both Counts I and II, without prejudice[.]"

In Meekins' suggestions in opposition to St. John's motion to dismiss, filed August 25, 2003, Meekins argued that the requirements for declaratory judgment had been met. Meekins admitted, however, that St. John's was a health care provider under § 538.205, RSMo 2000, that the drug screen test was a health care service, and that Meekins should have filed a health care affidavit. Meekins acknowledged that Count II was, "in essence, a medical malpractice cause of action" and asked the court for additional time to file the health care affidavit.

On August 26, 2003, St. John's filed a motion and suggestions to dismiss based upon the statute of limitations. Within the motion, St. John's argued that Meekins' suit was time barred because the claim for medical malpractice was filed more than two years after the allegedly negligently performed drug screen test. St. John's asked that the trial court dismiss the action, with prejudice.

On November 5, 2003, the trial court entered an order which stated, "after having considered the pleadings and the arguments and briefs of counsel, [the court] does hereby Order Count I and Count II of [Meekins'] Petition dismissed." Meekins' attempted to appeal that order, but, as earlier mentioned herein, this Court dismissed her appeal for lack of appellate jurisdiction, finding there was no final judgment because the trial court's order dismissing Counts I and II of the petition had not been denominated as a judgment.

Following the dismissal of that appeal, the trial court, on April 8, 2004, entered a judgment which stated, "after having considered the pleadings and the arguments and briefs of counsel, [the court] does hereby find judgment in favor of [St. John's] on Count I and Count II of [Meekins'] Petition." On April 28, 2004, Meekins filed a motion for reconsideration indicating that her "causes of action do not sound in medical malpractice and the two year statute of limitation and [requirement for health care] affidavit do not apply." Meekins asked the court to reconsider and set aside its April 8, 2004, judgment and deny St. John's motion to dismiss. On May 17, 2004, the trial court entered an order overruling Meekins' motion for reconsideration. This appeal followed.

## Discussion

Meekins raises two points in this appeal. In Point I, Meekins argues that the trial court erred in granting St. John's motion to dismiss Count I of her petition, in which she sought declaratory judgment, because all of the necessary elements for declaratory judgment were met. In Point II, Meekins argues that the trial court erred in granting St. John's motion to dismiss Count II of her petition because the claim is not for medical malpractice, but rather is a claim for general negligence. Therefore, according to Meekins, a five-year statute of limitation applies, not the two-year for medical malpractice, and no health care affidavit is required.

We note that the points raised by Meekins here are the same two points she raised in the previous appeal that was dismissed. Her points reference the trial court's grant of St. John's motion to dismiss. In the earlier order of the trial court, it specified that Counts I and II of Meekins' petition were dismissed. However, in the April 8, 2004, judgment, which according to Meekins' notice of appeal is the judgment from which she is appealing here, the trial court stated that it found in favor of St. John's on Counts I and II. As there were no other motions before the

trial court prior to its April 8, 2004, judgment, we assume that by using language in the judgment that the court found "in favor of [St. John's] on Count I and Count II of [Meekins'] Petition," the trial court was sustaining St. John's motion to dismiss the action with prejudice. In their briefs before this Court, both Meekins and St. John's have made that assumption as well.

*Point I—Whether elements of declaratory judgment were met*

In her first point, Meekins' argues that the trial court erred in granting St. John's motion to dismiss Count I of her petition because the pleaded facts of her petition met the required elements of declaratory judgment.

We will affirm the trial court's grant of a motion to dismiss if any ground for dismissal supports the motion. *Koehr v. Emmons,* 98 S.W.3d 580, 582 (Mo.App.2002). If the trial court does not specify its reason for sustaining the motion to dismiss, we presume that the trial court dismissed the case based on one of the reasons stated in the motion itself. *Id.*

In our review of a trial court's grant of a motion to dismiss, we consider whether the facts as pleaded and any reasonable inferences drawn therefrom state any ground for relief. *George v. Brewer,* 62 S.W.3d 106, 108–09 (Mo.App.2001). If the facts and inferences meet the elements of a recognized cause of action, including a cause of action that may be adopted by the court, then the case cannot be dismissed. *Thruston v. Jefferson City School Dist.,* 95 S.W.3d 131, 133 (Mo.App.2003).

Under § 527.010, RSMo 2000, "circuit courts ... shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." The powers conferred in § 527.010, RSMo 2000, may be exercised "in any proceeding where declaratory relief is sought, in which a judgment or

decree will terminate the controversy or remove an uncertainty." § 527.050, RSMo 2000. The exercise of the power to enter a declaratory judgment is discretionary, in that "[t]he court may refuse to render or enter a declaratory judgment or decree where such judgment or decree ... would not terminate the uncertainty or controversy giving rise to the proceeding." § 527.060, RSMo 2000.

A declaratory judgment is only appropriate where a plaintiff can obtain relief against the defendant, as the function of declaratory judgment is to dispel uncertainty regarding legal rights of the parties. *Stinson v. Sharp,* 80 S.W.3d 852, 854 (Mo.App.2002). If the allegations of the petition invoke principles of substantive law that, if proved, would entitle the plaintiff to a declaration of rights or status, the pleading is sufficient and must not be dismissed. *Id.*

In order to maintain a declaratory judgment cause of action, the petition must first establish that there is a justiciable controversy. *Shelter Mut. Ins. Co. v. Vulgamott,* 96 S.W.3d 96, 101 (Mo.App. 2003). A justiciable controversy exists when the petitioner has a legally protectable interest at stake, a substantial controversy exists between the parties who have genuinely adverse interests, and the controversy is ripe for judicial determination. *George,* 62 S.W.3d at 109. A legally protected interest consists of a pecuniary or personal interest directly at issue, which is subject to either immediate or prospective significant relief. *Shelter Mut. Ins. Co.,* 96 S.W.3d at 101. In addition, there must not be another adequate remedy available to the petitioner. *Id.*

Within her petition, Meekins stated "[t]hat a controversy has arisen between [her] and [St. John's] in that [Meekins] has never taken any controlled substance in

her lifetime including, but not limited to, methamphetamine." Meekins also averred that St. John's "drug screen is not correct, and in opposition to its results [Meekins] immediately went to [Cox] and submitted to a superior certified toxicology screen." Meekins asked the trial court to declare that the drug screen test performed by St. John's "is incorrect and falsely showed that [Meekins] had methamphetamine in her system."

■ "A ripe controversy exists if the parties' dispute is developed sufficiently to allow the court to make an accurate determination of the facts, to resolve a conflict that is presently existing, and to grant specific relief of a conclusive character." *Id.* at 102 (internal citations omitted). The purpose of declaratory judgment is to afford relief from uncertainty and insecurity, and to reduce multiplicity of litigation. *Id.* at 103.

■ In a reply brief in support of its motion to dismiss, St. John's indicated that the trial court had "previously pointed out [that] . . . it would be helpless to declare as a matter of law anything regarding the subject drug screen conducted nearly three (3) years ago." Although there is no other record provided showing whether that statement was in fact made by the trial court, we agree with the sentiment. We also question, as is required for declaratory judgment, whether Meekins and St. John's have "genuinely adverse interests." *George*, 62 S.W.3d at 109. In performing the drug test, St. John's has no interest in the results of the test, or whether the test shows positive or negative for any drugs.

It does however, and as will be addressed in Point II, have an interest in whether such a test is performed correctly. And in that regard, Meekins had another available remedy, which was a negligence claim. Therefore, the trial court did not err in sustaining St. John's motion to dismiss Count I of Meekins' petition, the declaratory judgment count. Point I is denied.

*Point II—Whether Count II is for medical negligence*

In her second point, Meekins contends that the trial court erred in granting St. John's motion to dismiss Count II of her petition because the claim was for negligence, not for medical negligence, and thus not time barred. Therefore, according to Meekins, a five-year statute of limitation applies, not the two-year for medical malpractice, and no health care affidavit is required. In addition, Meekins contends that in the situation that occurred here where a hospital performed a drug screen test not requested by the patient or a physician as part of the patient/physician relationship, St. John's was not a health care provider, and performing a drug screen test was not a health care service. All parties agree that the case was filed more than two years, but less than five years, following the drug test and Meekins' subsequent termination of her employment.

We will affirm the trial court's grant of a motion to dismiss if any ground for dismissal supports the motion. *Koehr*, 98 S.W.3d at 582. If the trial court does not specify its reason for sustaining the motion to dismiss, we presume that the trial court dismissed the case based on one of the reasons stated in the motion itself. *Id.*

Our review is as stated in Point I, in that when we review a trial court's grant of a motion to dismiss, we consider whether the facts as pleaded and any reasonable inferences drawn therefrom state any ground for relief. *George*, 62 S.W.3d at 108–09. If the facts and inferences meet the elements of a recognized cause of action, including a cause of action that may be adopted by the court, then the case

cannot be dismissed. *Thruston*, 95 S.W.3d at 133.

■ As part of its argument that the trial court did not err in granting the motion to dismiss, St. John's notes that Meekins admitted in her suggestions in opposition to the motion to dismiss that "Count II is, in essence, a medical malpractice cause of action." Meekins' actions or words did not constitute a "judicial admission." "A true judicial admission is one made in court or prepatory to trial by a party or his attorney that concedes, for the purposes of that particular trial, the truth of some alleged fact so that one party need offer no evidence to prove it, and the other party ordinarily is not allowed to disprove it." *Owens v. Dougherty*, 84 S.W.3d 542, 547 (Mo.App.2002). A judicial admission removes the proposition in question from the field of disputed issues in the case. *Id.*

■ A party is precluded from presenting a new or different theory on appeal than was before the trial court. *In re Marriage of Parmenter*, 81 S.W.3d 234, 240 (Mo.App.2002). However, that Count II represented an ordinary negligence claim rather than a claim for medical malpractice was presented to the trial court in Meekins' motion for reconsideration; thus, that she may have expressed at one point that Count II was a medical malpractice claim, but later in her motion for reconsideration before the trial court and in briefs before this Court now contends that the cause of action in Count II does "not sound in medical malpractice" is of no consequence to our analysis. Further, as stated in the standard detailed above from *Thruston*, as long as the facts and inferences from the pleadings meet the elements of a recognized cause of action, including a cause of action that may be adopted by the court, the case may not be dismissed. 95 S.W.3d at 133.

Under § 516.105, RSMo 2000, "[a]ll actions against physicians, hospitals, ... and any other entity providing health care services ... for damages for malpractice, negligence, error or mistake related to health care shall be brought within two years from the date of occurrence of the act of neglect complained of[.]" Any act or omission related to the care, custody, or treatment of a patient, whether pled as ordinary negligence or negligence related to malpractice, falls under § 516.105, RSMo 2000. *Robinson v. Health Midwest Development Group*, 58 S.W.3d 519, 522 (Mo.banc 2001). Pursuant to § 538.225.1, RSMo 2000,

[i]n any action against a health care provider for damages for personal injury or death on account of the rendering of or failure to render health care services, the plaintiff or his attorney shall file an affidavit with the court stating that he has obtained the written opinion of a legally qualified health care provider which states that the defendant health care provider failed to use such care as reasonably prudent and careful health provider would have under similar circumstances and that such failure to use such reasonable care directly caused or directly contributed to cause the damages claimed in the petition.

Health care provider and health care services are defined in § 538.205, RSMo 2000, and a health care provider is "any physician, hospital, health maintenance organization, ... and any other person or entity that provides health care services under the authority of a license or certificate[.]" § 538.205(4), RSMo 2000. Health care services are "any services that a health care provider renders to a patient in the ordinary course of the health care provider's profession or, if the health care provider is an institution, in the ordinary course of furthering the purposes for

which the institution is organized." § 538.205(5), RSMo 2000.

■■■■ In an action for negligence, a plaintiff must establish: (1) the existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) the failure of the defendant to perform that duty; and (3) the defendant's failure to perform that duty proximately caused injury to the plaintiff. *Horneyer v. City of Springfield,* 98 S.W.3d 637, 641 (Mo.App. 2003). In a standard medical malpractice action, the plaintiff is required to establish: (1) an act or omission by the defendant that was not in keeping with the degree of skill and learning ordinarily used by members of the defendant's profession; and (2) that such negligence caused the plaintiff's injury. *Spears v. Capital Region Med. Ctr., Inc.,* 86 S.W.3d 58, 61 (Mo.App.2002). The claim here appears to be more of an ordinary negligence claim rather than one for medical malpractice.

■■■■ The question of whether in the situation before us St. John's was a health care provider and the drug screen test was a health care service has not been directly answered in a Missouri case. Missouri cases have stated, however, that a physician/patient relationship is essential to a medical malpractice claim. *Millard v. Corrado,* 14 S.W.3d 42, 49 (Mo.App.1999). Therefore, absent that physician/patient relationship, a medical malpractice claim must fail. *Id.*

■■■■ It is also been stated that when a provider's allegedly negligent acts or omissions do not involve a matter of medical science, a duty under ordinary negligence may also exist when public policy favors the recognition of such a duty or when the harm is particularly foreseeable. *Id.* at 46–47. There is at least one case in Missouri where a general negligence claims were brought against the employer who ordered the drug test as well as the company who performed the test. *Irwin v. Wal–Mart Stores, Inc.,* 813 S.W.2d 99, 100–01 (Mo.App.1991). In that case, however, the claims did not survive summary judgment. *Id.* at 102.

Other cases have discussed when the health care affidavit is required. In *Jacobs v. Wolff,* 829 S.W.2d 470 (Mo.App. 1992), it was determined that § 538.225, which outlines when the health care affidavit is required, applies when the relationship of the parties and the "true claim" for damages relates to wrongful acts of a health care provider. 829 S.W.2d at 472. In *St. John's Reg'l Health Ctr., Inc. v. Windler,* 847 S.W.2d 168 (Mo.App.1993), the appellate court noted that the *Jacobs* case taught that the provisions under § 538.225 applied only if the "true claim" related to the provision of health care services. 847 S.W.2d at 171. These principles were applied in *Vitale v. Sandow,* 912 S.W.2d 121 (Mo.App.1995), in which it was determined on appeal that the basis of the plaintiff's false imprisonment claim was the incorrect medical determination that she needed to be confined and thus, the true claim for damages related to the wrongful acts of a health care provider and the provision of health care services. 912 S.W.2d at 122.

Other states have addressed whether performing a drug test is a health care service. In *Williams v. Nat'l R.R. Passenger Corp.,* 16 F.Supp.2d 178 (D.Conn. 1998), the court determined that the plaintiff could proceed with a general negligence claim against the hospital, but that the medial malpractice claim did not exist in the absence of a physician/patient relationship. 16 F.Supp.2d at 181–82. The court specifically noted that North Haven Hospital, also a defendant in the action, by performing a drug test, was not perform-

ing a health care service or providing medical treatment. *Id.* at 181.

Louisiana has addressed the issue at its appellate and Supreme Court levels, including in *Price v. City of Bossier City*, 693 So.2d 1169 (La.1997). In *Price*, the Louisiana Supreme Court determined that the drug screen test performed at Bossier Medical Center, also a defendant in the action, was not a health care service because Price was not a patient with regard to the drug test. *Id.* at 1172–73. Therefore, it was unnecessary for the case to be submitted first to a medical review panel as indicated by the state's Medical Malpractice Act. *Id.* at 1173.

In another Louisiana case, *Nehrenz v. Dunn*, 593 So.2d 915 (La.App.1992), the laboratory who conducted the drug test argued that it was not a health care provider under the Medical Malpractice Act. *Id.* at 917. The appellate court agreed, but noted that a general negligence claim existed against the laboratory based on a breach of duty to perform the drug tests in a non-negligent manner. *Id.* at 918. Therefore, the dismissal of the claims was reversed and the cause remanded. *Id.*

The analyses of the Connecticut and Louisiana cases fit well with the principles stated in the Missouri cases. Therefore, we determine that a drug screen test performed by a hospital is not a health care service if such is not performed within the confines of a physician/patient relationship. Although a medical malpractice negligence claim would not exist in that situation, a general negligence claim may.

Here, Meekins met her burden to overcome a motion to dismiss on her general negligence claim, and the trial court did err in dismissing Count II in her petition. Point II has merit.

**Conclusion**

The judgment with respect to Count II is reversed and the cause remanded with directions for the trial court to proceed in a manner not inconsistent with this opinion. In all other respects, the trial court's judgment is affirmed.

GARRISON, P.J., files separate opinion concurring in part and dissenting in part;

RAHMEYER, J., concurs.

PHILLIP R. GARRISON, Presiding Judge, concurs in part and dissents in part.

I concur in the result reached in the majority opinion with reference to Meekins' first point on appeal. I respectfully dissent, however, with reference to the second.

The trial court, without specifying the grounds upon which it acted, dismissed the second count of Meekins' petition. As pointed out by the majority opinion, we presume that the dismissal was based on one or more of the reasons stated in the motion to dismiss. Here, St. John's filed two motions to dismiss. The first, as it related to the count for damages, was based on Meekins' failure to file the affidavit required by § 538.225.1 in an action against a health care provider for damages for personal injury or death on account of the rendering of or failure to render health care services. The second was based on the two-year statute of limitations pursuant to § 516.105.

In holding that the trial court erroneously dismissed Count II of the petition, the majority opinion concludes that "we determine that a drug screen test performed by a hospital is not a health care service if such is not performed within the confines of a physician/patient relationship." It thus seems to conclude that here the two-year statute of limitations and the

requirement of an affidavit by a qualified health care provider do not apply because the drug screen test was not a health care service as a consequence of there being no physician/patient relationship between Meekins and St. John's. I disagree with this conclusion for several reasons.

First, the basis for the majority's conclusion is unclear, but appears to be related to Meekins' statement in her point relied on that "[St. John's] is not a health care provider when performing a drug screen at any employer's discretion, not in the course of necessary treatment." That statement, together with Meekins' statements in the Statement of Facts portion of her brief concerning the background and circumstances surrounding the drug screening are completely foreign to the record on appeal. Meekins admits that in her Statement of Facts, and St. John's, in its brief, argues that this appeal should be dismissed because of Meekins' violation of Rule 84.04(c).[1]

We cannot consider matters that are not part of the record on appeal. *Denny's Inc. v. Avesta Enter. Ltd.*, 884 S.W.2d 281, 291 (Mo.App. W.D.1994); *Miller v. River Hills Dev.*, 831 S.W.2d 756, 757 (Mo.App. E.D. 1992). In particular we cannot accept statements in a party's brief as a substitute for the record on appeal. *Trout v. Gen. Sec. Serv. Corp.*, 8 S.W.3d 126, 130 (Mo.App. S.D.1999); *Rice v. State, Dept. of Social Serv.*, 971 S.W.2d 840, 842 (Mo.App. E.D.1998).

Additionally, the majority cites *Millard v. Corrado*, 14 S.W.3d 42, 49 (Mo.App. E.D.1999) for the proposition that "absent [a] physician/patient relationship, a medical malpractice claim must fail." That case was against an individual physician and the issue was the propriety of the

entry of summary judgment. As stated in *Richardson v. Rohrbaugh*, 857 S.W.2d 415, 417–418 (Mo.App. E.D.1993), "[i]n order to maintain a cause of action in tort against a doctor, appellants must first establish a physician/patient relationship." "A physician's liability to a patient is predicated on the existence of a physician-patient relationship." *Corbet v. McKinney*, 980 S.W.2d 166, 169 (Mo.App. E.D.1998). I am not aware of any Missouri cases holding that a "physician/patient" relationship must exist between a hospital and patient as a predicate for a medical malpractice claim to be viable. In construing § 538.225, courts have held that a health care affidavit is required if the relationship of the parties is that of health care provider and recipient, and if the true claim relates only to the provision of health care services. *Vitale v. Sandow*, 912 S.W.2d 121, 122 (Mo.App. W.D.1995).

Here, the parties admit that St. John's is a hospital. Once a hospital accepts a patient, it owes that patient a specific duty of reasonable care proportionate to the patient's needs as the patient's known condition requires to safeguard and protect that patient from injury. *Poluski v. Richardson Transp.*, 877 S.W.2d 709, 713 (Mo.App. E.D.1994). According to § 538.225.1, an affidavit from a qualified health care provider is required in "any action against a health care provider for damages for personal injury or death on account of the rendering of or failure to render health care services." Section 516.105 applies the two-year statute of limitations to "[a]ll actions against physicians, hospitals, ... and any other entity providing health care services ... for damages for malpractice, negligence, error or mistake related to

---

1. I would deny the request to dismiss the appeal, and would decide the case on the merits.

health care." "Any act or omission related to the care, custody, or treatment of the patient, whether pled as ordinary negligence or negligence relating to malpractice is covered under section 516.105." *Robinson v. Health Midwest Dev. Group,* 58 S.W.3d 519, 522 (Mo. banc 2001).

Second, the majority's declaration, as a matter of law, "that a drug screen test performed by a hospital is not a health care service if such is not performed within the confines of a physician/patient relationship" seems to me to be contrary to the definition of health care services. Section 538.205(5) defines "health care services" as:

> any services that a health care provider renders to a patient in the ordinary course of the health care provider's profession or, if the health care provider is an institution, in the ordinary course of furthering the purposes for which the institution is organized. Professional services shall include, but are not limited to, transfer to a patient of goods or services incidental or pursuant to the practice of the health care provider's profession or in furtherance of the purposes for which an institutional health care provider is organized.

Within the confines of the record before the trial court, I do not believe we can say as a matter of law that the drug screen test here was not a health care service thereby excluding the application of § 538.225.1, as well as § 516.105.

Third, it is significant that Meekins' counsel conceded to the trial court that St. John's motion to dismiss for failure to file the affidavit required by § 538.225.1 was well taken. In particular, he filed a response to St. John's first motion to dismiss in which he specifically admitted the accuracy of St. John's analysis that the claim for damages should be dismissed because "(a) [St. John's] is a health care provider as defined by [§ ] 538.205(4) RSMo, (b) a drug screen test falls within the broad definition of 'health care service' as defined in [§ ] 538.225(5) RSMo, and, therefore, a health care affidavit should have been filed within ninety (90) days of filing [Meekins'] Petition." Meekins' counsel also stated: "[t]herefore, [St. John's] is correct that a health care affidavit is required. Count II is, in essence, a medical malpractice cause of action. As pleaded, it is a viable cause of action, but cannot be litigated without the requisite health care affidavit." That response was filed on August 25, 2003. The next day, August 26, 2003, St. John's filed a second motion to dismiss based on the two-year statute of limitations. That was the status of the record when the trial court entered its judgment dismissing the petition seven and one-half months later.

The majority opinion holds that the statements by Meekins' counsel were not judicial admissions, citing *Owens v. Dougherty,* 84 S.W.3d 542, 547 (Mo.App. S.D. 2002). The language from *Owens* cited by the majority, however, would seem to indicate that Meekins' admissions in the written response to St. John's first motion to dismiss were in fact judicial admissions. *See also Francis v. Richardson,* 978 S.W.2d 70, 73 (Mo.App. S.D.1998) ("[a] judicial admission is 'a more or less formal act done in the course of judicial proceedings which waives or dispenses with the production of evidence and concedes for the purpose of the litigation that a certain proposition is true.' ... 'It removes the proposition in question from the field of disputed issues in the particular case wherein it is made.' ").

Some courts, in deciding whether a matter has been judicially admitted, have considered whether the opposing party relied on statements as admissions. *Piel v. Piel,* 918 S.W.2d 373, 375–76 (Mo.App. E.D. 1996). Here, St. John's specifically relied

on the admissions of Meekins' counsel in its second motion to dismiss, based on the statute of limitations, filed the next day.

Even if the statements of Meekins' counsel were not judicial admissions, they were before the trial court when it ruled on the motions to dismiss. At that time, the status of the record was that the petition alleged that St. John's was a non-profit hospital incorporated under Chapter 355 RSMo; it performed a drug screen on Meekins which showed positive for methamphetamine; that the drug screen was not correct; that St. John's had a duty to properly perform and/or use a drug screen test process that was accurate and reliable; and that St. John's breached its duty by either improperly performing the test and/or using an unreliable testing procedure with resulting damage to Meekins. It was in the face of those allegations of the petition that Meekins' counsel informed the trial court that St. John's was correct that this is a medical malpractice suit for which there must be an affidavit pursuant to § 538.225.1.

The majority also acknowledges the premise that a party may not present a new or different theory on appeal than was before the trial court, citing *In re Marriage of Parmenter*, 81 S.W.3d 234, 240 (Mo.App. S.D.2002). This court said in *Parmenter* that "[a]ppellate courts are merely courts of review for trial court errors, and there can be no review of a legal proposition which was not presented to or expressly decided by the trial court." *Id.* The majority avoids these principles by noting that Meekins later argued in a motion for reconsideration that her petition should not have been dismissed because her "causes of action do not sound in medical malpractice and the two[-]year statute of limitation and affidavit do not apply." That motion was filed on April 28, 2004, after the final judgment had been entered

on April 8, 2004. In my view the fallacy of the majority's reasoning is that this is not an appeal from a denial of the motion for reconsideration. It is an appeal from the granting of the motions to dismiss. The trial court, when it ruled the motions to dismiss, did not have before it any contention other than the allegations in Meekins' petition and her acknowledgment that this was a medical malpractice suit subject to the required filing of a § 538.225.1 affidavit. Based on the record here, the contrary contention was not placed before the trial court until after the petition was dismissed. The notice of appeal filed by Meekins specifically identifies the judgment appealed from as that of April 8, 2004, dismissing the petition. No appeal was taken, and no issue is raised on this appeal, concerning the overruling of Meekins' motion for reconsideration in which she sought to take a different position on the nature of the action, the applicability of § 538.225.1, and the applicable statute of limitations.

As indicated, the second motion to dismiss filed by St. John's was based on the two-year statute of limitation provided by § 516.105. Although not mentioned by the parties to this appeal, I note that the limitations period under that statute was not raised as an affirmative defense in the answer filed by St. John's. A statute of limitations is an affirmative defense that is waived if not raised; a party raising the statute of limitations carries the burden of both pleading and proving the defense; and limitations is not one of the enumerated defenses under Rule 55.27 that may be raised by a motion rather than in an answer. *Yahne v. Pettis County Sheriff Dept.*, 73 S.W.3d 717, 719 (Mo.App. W.D. 2002). Where a statute of limitations is asserted in support of a motion to dismiss, the petition should not be dismissed unless the petition clearly establishes on its face and without exception that it is time

barred. *Id.* Here, the petition, together with the admissions of Meekins established that the suit is one for medical malpractice governed by the two-year statute of limitations provided in § 516.105. The petition clearly alleged that the act complained of occurred on November 1, 2000, and that the suit was filed on March 19, 2003. Under § 516.105 the action must be brought within two years from the date of occurrence of the act of neglect complained of. *Weiss v. Rojanasathit,* 975 S.W.2d 113, 119 (Mo. banc 1998). Here, the fact that the statute of limitations was raised in the motion did not prevent the trial court from dismissing Count II of the petition on that basis.

I would also affirm the dismissal of Count II.