893 So.2d 23 (2005)
Nolan DELCAMBRE and Patricia Delcambre
v.
BLOOD SYSTEMS, INC.
No. 2004-C-0561.
Supreme Court of Louisiana.
January 19, 2005.
Rehearing Denied February 25, 2005.
*25 Milling, Benson, Woodward, LLP, F. Frank Fontenot, Kym Krystyna Keller, New Orleans, for applicant.
Lawrence N. Curtis, Ltd., Gregory Karl Klein, Lawrence N. Curtis, Lafayette, for respondent.
Cynthia C.C.M. Anderson, Shreveport, for amicus curiae Lifeshare Blood Centers.
Clark Raymond Cosse, III, Baton Rouge, for amicus curiae Louisiana Hospital Association.
James Cleverly Klick, Stephen Jay Herman, New Orleans, for amicus curiae Louisiana Trial Lawyers Association.
Kathryn Montez Caraway, New Orleans, Nairda Teresa Colon, for amicus curiae Blood Center.
KIMBALL, Justice.
We granted certiorari to consider the issue of whether the provisions of La. R.S. 40:1299.47(B)(1)(a)(i) of the Medical Malpractice Act requiring all claimants to first submit their cases to a medical review panel prior to initiating proceedings in a district court apply to a plaintiff whose claim arises from the voluntary donation of blood at a community blood bank. After examining the plain language of La. R.S. 40:1299.41 et seq., we conclude its provisions are not applicable to blood donors allegedly injured during the process of donating blood because they are not patients pursuant to the statute. Accordingly, we affirm the judgment of the court of appeal reversing the district court's grant of defendant's dilatory exception of prematurity.

Facts and Procedural History
On July 29, 1999, Nolan Delcambre went to the United Blood Services office located in Lafayette, which is owned and operated by Blood Systems, Inc. (hereinafter "BSI"), for the sole purpose of gratuitously donating blood. During his attempted donation, a phlebotomist employed by BSI allegedly inserted a needle too deeply into Delcambre's right arm, causing him to suffer pain and causing his arm to immediately fill with blood and severely swell. Later that same day, Delcambre sought emergency treatment at Lafayette General Medical Center, where he was hospitalized for three days. Ultimately, he had to have surgery as a result of the injury, and allegedly he continues to suffer severe pain and possible permanent impairment of his arm as a result of the attempted phlebotomy.
Thereafter, on June 15, 2000, Delcambre filed suit against BSI seeking recovery in negligence for damages, including past, present, and future medicals, loss of wages, general damages, loss of household services, and consequential damages, sustained from the allegedly negligent phlebotomy. Delcambre's spouse, Patricia Delcambre, joined in the suit asserting damages for losses of consortium, service, and society.
In response to plaintiffs' petition, BSI filed a dilatory exception of prematurity. In this exception, BSI argued that Delcambre's suit should be dismissed because La. R.S. 40:1299.41 et seq., the Medical Malpractice Act ("MMA"), requires a claimant to first convene a medical review panel *26 prior to instituting suit in district court against a "health care provider" covered by the MMA. La. R.S. 40:1299.47(B)(1)(a)(i). BSI asserted that during the relevant time period, it was a qualified health provider pursuant to the MMA, and therefore, the suit should be dismissed as premature since Delcambre had failed to first seek review of his claim by a medical review panel. The district court granted BSI's exception of prematurity based on BSI's statutory qualified health care provider status.
On appeal, the court of appeal reversed the district court's judgment granting the dilatory exception of prematurity and remanded the matter to the district court for trial on the merits. Delcambre v. Blood Systems, Inc., 03-1130 (La.App. 3 Cir. 2/4/04), 866 So.2d 352. In reaching its decision, the court of appeal first determined that although BSI is a qualified health care provider under the revised statutes, that finding alone was not dispositive of the issue of whether Delcambre's claims were subject to the MMA's medical review panel requirement. The court noted the MMA requires any malpractice claim against a qualified health care provider first be brought before a medical review panel. Next, the court determined that in order for a claim to constitute malpractice, the claim must be based upon health care performed or furnished "for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." La. R.S. 40:1299.41(A)(9). The court of appeal found that the application of the definitions set forth in the MMA to the present case
clearly establishe[d] that Mr. Delcambre was not BSI's patient at the time of injury. He did not receive any health care or medical treatment whatsoever. "A blood donor is not a patient who consults blood bank personnel for treatment or therapy." Laburre v. E. Jefferson Gen. Hosp., 555 So.2d 1381, 1384 (La.1990). Rather, he went voluntarily to the blood center to donate his blood for the benefit of others. Furthermore, there was no act performed upon him that was for his own benefit or on his behalf. He did receive a cursory screening prior to the donation, however, this screening "is essential for the benefit of the blood recipient and not the blood donor." Id. He entered BSI "for the sole purpose of donating blood, and at no time did [he] receive medical care or treatment as contemplated by the Louisiana Medical Malpractice Act." George v. Our Lady of Lourdes Reg'l Med. Center, Inc., 00-930, p. 3 (La.App. 3 Cir. 12/6/00), 774 So.2d 350, 352, writ denied, 01-51 (La.4/23/01), 788 So.2d 427.
We granted certiorari to review the decision of the court of appeal, and specifically to consider whether a voluntary blood donor is a patient of the blood bank, as set forth in La. R.S. 40:1299.41(3), thereby subjecting the donor to the requirements of the MMA. Delcambre v. Blood Systems, Inc., 04-0561 (La.4/30/04), 872 So.2d 502.

Law and Discussion
In 1975, the Louisiana Legislature enacted the MMA in response to a perceived medical malpractice crisis in the state. Spradlin v. Acadia-St. Landry Medical Foundation, 98-1977, p. 6 (La.2/29/00), 758 So.2d 116, 120. The intended purposes of the MMA were to reduce or stabilize medical malpractice insurance rates and to assure the availability of affordable medical services to the general public. Hutchinson v. Patel, 93-2156, p. 3 (La.5/23/94), 637 So.2d 415, 419. To achieve these ends, the Act provides two principal advantages in actions for malpractice against those defendants designated "qualified health care providers." Id. at p. 4, 637 So.2d at 419. First, the liability *27 of a qualified health care provider for any malpractice claim is limited to $100,000, while the total amount recoverable by any one defendant for the death or injury of a patient from the Patient's Compensation Fund may not exceed $500,000,[1] plus interest and costs. La. R.S. 40:1299.42(B). Second, no action for malpractice against a qualified health care provider, or his insurer, may be commenced in any court prior to submission of the complaint to a medical review panel and the panel has rendered its expert opinion on the merits of the complaint, unless this requirement is waived by the parties' agreement. La. R.S. 40:1299.47. Thus, any suit for medical malpractice subject to the MMA filed in district court prior to presentation of the claim to a medical review panel is subject to the dilatory exception of prematurity because the cause of action is not yet ripe for judicial determination. See La. C.C.P. art. 926; Spradlin at p. 4, 758 So.2d at 119.
This court has held that the MMA and its procedural requirements and tort liability limitations apply solely to medical malpractice claims; all other tort liability on the part of a qualified health care provider is governed by general tort law. Coleman v. Deno, 01-1517, p. 16 (La.1/25/02), 813 So.2d 303, 315; Spradlin at pp. 6-7, 758 So.2d at 120. Therefore, to determine whether or not Delcambre's claims against BSI are subject to the requirements of the MMA, we must first ascertain if his claims qualify as malpractice claims as defined by the Act.
Legislation is the solemn expression of legislative will, thus interpretation of a law is primarily the search for the legislature's intent. La. C.C. art. 1; Hutchinson at p. 5, 637 So.2d at 420. The rules of statutory construction dictate that when a law is clear and unambiguous and the application of the law does not lead to absurd consequences, the law must be applied as written without any further interpretation regarding the intent of the legislature. La. C.C. art. 9. Consequently, the starting point for the interpretation of any statutory provision is the actual language of the provision itself. Ginn v. Woman's Hosp. Found., Inc., 03-1913, p. 9 (La.4/9/03), 842 So.2d 338, 344.
Malpractice is defined by the MMA as follows:
"Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient.
La. R.S. 40:1299.41(A)(8) (emphasis added). Therefore, in order for a plaintiff's claim to be considered a malpractice action under the MMA, the negligence or contract claim must be predicated on "health care or professional services" rendered by a health care provider "to a patient." It is undisputed that BSI, as a community blood center, is a health care provider as defined by the MMA. La. R.S. 40:1299.41(A)(1). BSI obtained its qualified *28 health care provider status[2] in 1992 and has since effectively maintained this status with the Louisiana Patients' Compensation Fund. However, the crucial determination in this case is whether Delcambre was a "patient" of BSI who was receiving "health care or professional services" at the time of the alleged tort, because recovery under medical malpractice is allowed only where a physician-patient relationship exists as the result of an express or implied contract and where the physician, or health care provider, breaches his contractual or professional duty to the patient. See Hutchinson at pp. 6-7, 637 So.2d at 421.
The MMA defines "patient" and "health care" as follows:
"Patient" means a natural person, including a nursing home resident, who receives or should have received health care from a licensed health care provider, under contract, expressed or implied.
"Health care" means any act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment or confinement.

La. R.S. 40:1299.41(A)(3) and (9) (emphasis added). Applying these definitions to the current matter, we find Delcambre was not a "patient" of BSI pursuant to the MMA at the time of the instant phlebotomy. To qualify as a "patient" under the Act, a person must be in the process of receiving, or should have received, "health care." The rendering of professional medical services to a person is not sufficient to characterize the person as a "patient" under the Act, and thus, any claim based on such professional services is not malpractice under the MMA. As this court previously has stated, "[w]hile clearly an act of malpractice can occur in the rendition of professional services, the patient must still be in the process of receiving `health care' from the doctor or hospital when the negligent rendition of professional services occurs" in order meet the Act's definition of a "patient," and thereby constitute a malpractice action under the MMA. Price v. City of Bossier City, 96-2408, p. 6 (La.5/20/97), 693 So.2d 1169, 1172. Therefore, to be a "patient" under the Act, the negligent act or omission "must have occurred `during the patient's medical care, treatment or confinement.'" See id. at 1173.
For Delcambre to be a "patient," he must have been receiving "health care" from BSI. "Health care," in turn, requires treatment performed by a health care provider on a patient during his "medical care, treatment or confinement." Our analysis thus turns on whether Delcambre was receiving "medical care" or "treatment" from BSI at the time of the act, or whether he was under "confinement."
This court addressed a similar issue in Price v. City of Bossier City, 96-2408 (La.5/20/97), 693 So.2d 1169. In Price, plaintiff sued both Bossier Medical Center and one of its physicians for negligence stemming from collecting, testing, and interpreting the results of a employer requested drug test. Id. at pp. 2-3, 693 So.2d at 1171. The defendants filed an *29 exception of prematurity claiming the plaintiff's petition stated a cause of action under the MMA and therefore must first be presented to a medical review panel. Id. at p. 3, 693 So.2d at 1171. The district court granted the exception and the court of appeal affirmed, finding that Price through her contact with the defendants became a patient of defendants and expected the physician to render his professional services with reasonable care. Id. Thereafter, this court reversed the lower courts' finding that Price was the defendants'"patient" and her claim was encompassed by the MMA. Id. at p. 7, 693 So.2d at 1173. We found that Price was not a "patient" under the Act because she was not receiving "health care" from the physician or hospital when the negligent drug screen was performed and interpreted. Id. The court's analysis applied the definition of "health care" and determined at the time of the employer requested drug screen, plaintiff was not receiving "medical care" or "treatment," nor confined by Bossier Medical Center. Id. at p. 6, 693 So.2d at 1172. Since she was not relying upon the defendants to diagnose a physical or medical condition of which she was unaware, she was not receiving "medical care." Id. at p. 6, 693 So.2d at 1173. Further, Price was not receiving "treatment" at the time of her drug screen because she was directed to go to the lab for the test at the behest of her employer, and not by her physician for the purpose of treating her injury. Id. at pp. 6-7, 693 So.2d at 1173. Finally, this court noted that she was not "confined" to the Medical Center during this period. Id. at p. 7, 693 So.2d at 1173. Thus, we concluded that for the purposes of her drug screen, Price was not a patient of the defendants and her claim did not fall under the MMA. Id.
Similarly, at the time of the allegedly negligent phlebotomy, Delcambre was not receiving "medical care" or "treatment" from BSI, rather he was voluntarily donating his blood for use as decided by BSI.[3] Delcambre was not receiving any "medical care" from BSI at the time of the donation, since he was not relying upon BSI to diagnose or inform him of any physical condition of which he may have been unaware. See Price, 96-2408 at p. 6, 693 So.2d at 1173. Although BSI did perform tests, such as HIV and Hepatitis screens, on Delcambre's blood after the donation, the purpose of these tests were to determine if his blood was disease-free and safe for transfusion to blood recipients, BSI's customers, who are the true benefactors of these screenings. There is no evidence in the record that suggests Delcambre donated blood in order to receive any type of medical diagnosis. Therefore, we do not find that Delcambre received "medical care" from BSI. Further, Delcambre was not in the process of receiving any medical "treatment" at the time of the donation. Contrary to the situation where a physician directs a patient to go to a lab for tests related to any medical condition for which the patient is being treated, Delcambre went to the blood center voluntarily, not at the direction of a physician, for the sole purpose of donating blood. See id. at p. 6-7, 693 So.2d at 1173. Finally, Delcambre was clearly not "confined" to a qualified health care facility at the time of the donation. Although the MMA does not define "confinement," we have found persons to be confined pursuant to the Act *30 when they are a resident of a nursing facility, Richard v. La. Extended Care Ctr., Inc., 02-0978 (La.1/14/03), 835 So.2d 460, but we have found a person not to be confined when he went to a lab for a drug screen. See Price, 96-2408, at p. 7, 693 So.2d at 1172. Based on these previous findings, we conclude Delcambre was not under confinement at the time of the donation. Thus, since Delcambre was not receiving medical care, was not being treated, and was not being confined at the time of the blood donation, he was not receiving "health care" under the MMA, and therefore does not meet the definition of a "patient" as defined in the Act.
BSI asserts that the collection of blood from donors, such as Delcambre, is within the scope of "medical care" regulated by the MMA. BSI cites La. C.C. art. 2322.1(A), which provides, in pertinent part, that "[t]he screening, procurement, processing, distribution, transfusion, or medical use of human blood and blood components of any kind ... by ... nonprofit community blood banks is declared to be, for all purposes whatsoever, the rendition of medical service ...," in support of its argument. However, art. 2322.1(A) does not define the procurement of blood as "medical care" under the MMA, but rather merely defines such action as a "medical service" which is not to be considered a sale and is not subject to warranties and strict liability without proof of negligence. Also, the Article's use of the phrase "rendition of a medical service" does not imply that these actions are medical care, but rather merely defines these actions as a professional "medical service." Further, BSI notes that the MMA defines a community blood center as one "who collects blood and blood products from donors primarily to supply blood and blood components to other health care facilities." La. R.S. 40:1299.41(A)(17). As stated earlier, every act of negligence performed by a qualified health care provider is not malpractice under the MMA, only those acts "based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient" are covered by the Act. La. R.S. 40:1299.41(A)(8); see Hutchinson, 93-2156, at. pp. 6-7, 637 So.2d at 421. Although BSI was rendering professional services, i.e. a phlebotomy, to Delcambre at the time of the alleged injury, Delcambre was not receiving "health care" as required under the MMA, and thus, Delcambre was not BSI's "patient" as defined in the Act and his claim against BSI is not one of malpractice under the Act.
Our conclusion that the plain language of the MMA provides that a voluntary blood donor is not a "patient" of the blood bank, in such circumstances, is further bolstered by the legislative history of the statute. In 1987, the Legislature amended Section 1299.41 of the MMA, in part to include community blood banks as health care providers under the Act. Act 567 of 1987 specifically states the purpose of the amendment was
to provide for limitations of liability of physicians, dentists, hospitals, or blood banks in connection with certain activities involving the use of blood, organs, or tissue resulting in the transmission of viral diseases or infectious agents, to include community blood banks and tissue banks within the definition of health care provider for purposes of medical malpractice, to provide with respect to the medical review panel, and to provide for related matters.
(emphasis added). Thus, the statue was amended to specifically include under the MMA any claims against blood or tissue banks filed by blood or tissue recipients based on the transmission of disease by the use of infected blood or tissue. Moreover, *31 the Minutes of the House Civil Law and Procedure Committee Meeting reflect that this amendment to the MMA was to limit liability of the aforementioned health care providers for "infectious agents transmitted in connection with certain uses of blood, organ, or tissue." Minutes of the House of Representatives Civil Law and Procedure Committee, May 25, 1987, p. 2. Both the Act and the minutes indicate that the addition of community blood banks as health care providers under the MMA was intended to broaden the protections afforded to health care providers under the MMA to those claims related to the transmission of disease to the donee, the "patient," and not to encompass the negligence claims of voluntary blood donors. As noted by this court in Hutchinson v. Patel, "where no physician-patient relationship exists ... application of the procedures and liability limits imposed by the Act would benefit health care providers without promoting the Act's purpose of ensuring the availability of affordable health care to the public." 93-2156, at p. 15, 637 So.2d at 426.
Additionally, policy dictates strict construction of the MMA against coverage because the Act is special legislation in derogation of the general rights of tort victims. Ginn, 02-1913, at p. 10, 842 So.2d 338, 344; Price, 96-2408, at p. 6, 693 So.3d at 1172; Sewell v. Doctors Hosp., 600 So.2d 577, 578 (La.1992). Our finding that Delcambre is not a "patient" pursuant to the Act, and therefore his claims do not constitute "malpractice" as defined in the Act, is consistent with this policy of strict construction of the Act against coverage.
Because we have already concluded Delcambre was not a "patient" of BSI for purposes of the Act, we find it unnecessary to apply the six factors set forth in Coleman v. Deno,[4] 01-1517, at p. 17-18, 813 So.2d at 315-16, for determining whether allegations of injury constitute "malpractice" under the MMA. These six factors are intended to aid a court's inquiry into whether the particular facts and allegations of a case establish a claim for "malpractice" as defined by La. R.S. 40:1299.41(A)(8). However, a prerequisite in the Act's statutory definition of "malpractice" is that "any unintentional tort or any breach of contract [claim] based on health care or professional services rendered" must be "to a patient." Id. Therefore, since we find Delcambre was not a "patient" of BSI, any further inquiry into whether the alleged conduct of BSI constitutes "malpractice" is unneeded.
The court of appeal was correct in reversing the district court's judgment granting BSI's exception of prematurity based on its finding Delcambre was not BSI's patient at the time of his injury. Therefore, we affirm the court of appeal's judgment reversing the district court's grant of BSI's exception of prematurity and remand the matter to the district court for further proceedings.

*32 Decree
For the above reasons, we conclude that a voluntary blood donor, who is allegedly injured during the process of blood donation by an employee of a community blood bank, is not a "patient" as defined by the Medical Malpractice Act, and therefore, is not required to initially submit his case to a medical review panel because the case is not covered by the Act. Accordingly, we affirm the judgment of the court of appeal reversing the district court's judgment granting BSI's dilatory exception of prematurity, and remand this case to the district court for further proceedings.
AFFIRMED AND REMANDED.
NOTES
[1] However, La. R.S. 40:1299.42(B)(3)(b) provides that the total amounts paid by both the qualified health care provider and the Patient's Compensation Fund shall not exceed the $500,000 limitation on recovery.
[2] Pursuant to La. R.S. 40:1299.42(A), to qualify for the protections granted under the MMA, a health care provider must:

(1) Cause to be filed with the board proof of financial responsibility as provided by Subsection E of this Section.
(2) Pay the surcharge assessed by the Part on all health care providers according to R.S. 40:1299.44.
[3] United Blood Service's "Donor Registration" form included an informed consent clause which included the following: "I voluntarily consent to donate blood under these terms and conditions for use as decided by the blood center." Delcambre signed the informed consent clause on the "Donor Registration" form on the date of the donation at issue.
[4] In Coleman, this court set forth the following six factors to be utilized in determining whether certain conduct by a qualified health care provider constitutes "malpractice" as defined under the MMA:

(1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill,
(2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached,
(3) whether the pertinent act or omission involved assessment of the patient's condition,
(4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform,
(5) whether the injury would have occurred if the patient had not sought treatment, and
(6) whether the tort alleged was intentional.