STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-13

MICKEY ATKINSON, ET AL.

VERSUS

LAMMICO INSURANCE COMPANY, ET AL.

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 238,842
HONORABLE GEORGE C. METOYER, JR., DISTRICT JUDGE

**********

MARC T. AMY
JUDGE

**********

Court composed of Jimmie C. Peters, Marc T. Amy and Phyllis M. Keaty, Judges.

REVERSED AND REMANDED.

Randall M. Seeser
Joseph P. Landreneau
Gold, Weems, Bruser, Sues & Rundell
Post Office Box 6118
Alexandria, LA   71307-6118
(318) 445-6471
COUNSEL FOR DEFENDANTS/APPELLEES:
    Healthcare Indemnity Insurance Company
    Dr. Martin Young

Michael G. Hodgkins
Veron, Bice, Palermo & Wilson, LLC
Post Office Box 2125
Lake Charles, LA   70602
(337) 310-1600
COUNSEL FOR PLAINTIFFS/APPELLEES:
    Mickey Atkinson
    Amy Atkinson

**David A. Woolridge, Jr.**
**Roedel, Parsons, Koch, Blache, Balhoff**
**& McCollister, A.L.C.**
**8440 Jefferson Highway, Suite 301**
**Baton Rouge, LA   70809-7652**
**(225) 929-7033**
**COUNSEL FOR THIRD PARTY APPELLANT:**
   **Louisiana Patients' Compensation Fund Oversight Board**

AMY, Judge.

The plaintiffs filed suit, alleging that their minor child suffered damages as a result of a physician's failure to test his brother for a genetic disorder. The defendants filed an exception of prematurity, arguing that the plaintiffs had failed to exhaust the remedies available in the Louisiana Medical Malpractice Act (MMA) prior to the institution of suit. The trial court determined that the child was a "patient" for the purposes of the MMA and granted the exception. The intervenor, the Louisiana Patient's Compensation Fund Oversight Board, appeals, asserting that the trial court erred in granting the exception. For the following reasons, we reverse the trial court's grant of the exception of prematurity and remand for further proceedings.

**Factual and Procedural Background**

This suit arises from allegations that one of the defendants, Dr. Martin C. Young, committed medical malpractice. The basic facts of this case are not in dispute. Mickey and Amy Atkinson consulted Dr. Young for treatment of their son Gabriel's deep-skin pigmentation condition. Dr. Young diagnosed Gabriel with idiopathic Addison's Disease, but did not test him to determine the cause of the disease.

After Gabriel's condition did not improve, the Atkinsons sought a second opinion from Dr. Janna Flint. Dr. Flint had Gabriel tested for a rare and potentially fatal cause of idiopathic Addison's Disease—X-linked Adrenoleukodystrophy ("X-ALD"). According to the parties' arguments at the hearing on the exception of prematurity, X-ALD is a genetic disorder that, if left untreated, results in coma and/or death by age thirteen. Gabriel tested positive for X-ALD. Because X-ALD is an X-linked genetic disorder, Dr. Flint "immediately recommended" that the Atkinsons'

other sons, Evan and Luke, be tested for the disease. The youngest son, Luke, tested positive.

The Atkinsons, individually and on behalf of Gabriel, Evan, and Luke, sued Dr. Young and his insurance companies, seeking damages for Dr. Young's alleged failure to test Luke for X-ALD.[1] The defendants filed a dilatory exception of prematurity, arguing that a medical review panel had not reviewed the plaintiffs' claim before they filed suit. The Louisiana Patient's Compensation Fund Oversight Board (the Oversight Board) intervened,[2] asserting that Luke was not a "patient" within the meaning of the MMA and that, therefore, the claim was not subject to review by a medical review panel.

After a hearing, the trial court found that "through Gabriel, Luke was also a patient" of Dr. Young and granted the exception. The Oversight Board appeals, asserting the following assignments of error:

1.      Contrary to the clear allegation in the plaintiffs' Panel Request, that Dr. Young never had a physician/patient relationship with Master Luke, which Panel Request was admitted into evidence by the plaintiffs with no contrary documentary evidence or testimony to contradict such allegation, the Trial Court erred in factually determining that Luke was a patient of Dr. Young.

2.      The Trial Court erred in granting Dr. Young's Exception of Prematurity, where the definition of "malpractice" under the MMA requires a physician/patient relationship and the undercontroverted evidence indicated that there was no

---

[1] In addition to Luke's alleged damages, the petition included claims for medical expenses and loss of consortium.

The plaintiffs filed a separate cause of action on behalf of Gabriel.

[2] Louisiana Revised Statutes 40:1299.44(D)(2)(b)(xiv) permits the Oversight Board to intervene "in any civil action or proceeding in which a health care provider files a dilatory exception of prematurity" where the Oversight Board reasonably believes that the health care provider is not qualified or the claim is not subject to the MMA.

2

physician/patient relationship between Dr. Young and Master Luke.

## Discussion

### *The Louisiana Medical Malpractice Act (MMA)*

Louisiana Revised Statutes 40:1299.41 through 40:1229.49 sets forth the MMA, which limits liability for "qualified health care providers" and provides a procedural framework for the litigation of medical malpractice claims. *See Delcambre v. Blood Systems, Inc.*, 04-561 (La. 1/19/05), 893 So.2d 23. The MMA's procedural requirements and limitations of liability apply only to medical malpractice claims. *Id.* All other tort liability by a qualified health care provider is subject to the general law of torts. *Id.* We note that, because the provisions of the MMA are in derogation of the rights of tort victims, the act is strictly construed. *Blevins v. Hamilton Med. Ctr., Inc.*, 07-127 (La. 6/29/07), 959 So.2d 440.

One of the primary features of the MMA is that, when a plaintiff asserts a claim meeting the statutory requirements, unless the parties agree to waive the requirement, the plaintiff must submit his complaint to a medical review panel and may not file suit in any court until the medical review panel has rendered its expert opinion on the merits of the complaint. *Delcambre*, 893 So.2d 23. Thus, if the plaintiff fails to submit the claim to a medical review panel before the institution of suit, the appropriate procedural remedy is a timely filed exception of prematurity. *Blevins*, 959 So.2d 440.

At the hearing on an exception of prematurity, "evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition." La.Code Civ.P. art. 930. "The burden of proving prematurity is on the exceptor . . . who must show that it is entitled to a medical

3

review panel because the allegations fall within the [MMA]." *Blevins*, 959 So.2d at 444.

"Malpractice," as defined by the MMA, is:

*any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered*, by a health care provider, *to a patient*, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.

La.R.S. 40:1229.41(A)(13) (emphasis added).

The MMA defines a "patient" as "a natural person, including a donor of human blood or blood components and a nursing home resident *who receives or should have received health care* from a licensed health care provider, *under contract, expressed or implied*." La.R.S. 40:1229.41(A)(15) (emphasis added). Further, "health care" is defined as "any act or treatment performed or furnished, or *which should have been performed or furnished*, by any health care provider for, to, or on behalf of a patient *during the patient's medical care, treatment, or confinement*, or during or relating to or in connection with the procurement of human blood or blood components." La.R.S. 40:1229.41(A)(9) (emphasis added).

In *Coleman v. Deno*, 01-1517 (La. 1/25/02), 813 So.2d 303, the supreme court enumerated a list of factors to be considered in determining whether alleged misconduct by a qualified health care provider constitutes "malpractice" under the MMA. The examining court should consider:

[1] whether the particular wrong is 'treatment related' or caused by a dereliction of professional skill[;]

4

[2] whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached[;] …

[3] whether the pertinent act or omission involved assessment of the patient's condition[;]

. . . .

[4] whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform[;]

[5] whether the injury would have occurred if the patient had not sought treatment[;] and

[6] whether the alleged tort was intentional.

*Id.* at 315-16 (quoting, in part, *Sewell v. Doctors Hospital*, 600 So.2d 577 (La.1992)).

***The Existence, or Non-Existence, of a Physician/Patient Relationship Between Luke and Dr. Young***

In its first assignment of error, the appellant contends that the trial court erred in finding that Luke was a patient of Dr. Young. The controlling question in this case is whether a minor sibling, who allegedly should have been tested for a genetic disorder by his brother's health care provider and who never received any testing or treatment from the health care provider, is a "patient" for purposes of the MMA.

<u>Whether Luke Received, or Should Have Received, Health Care Services from Dr. Young</u>

Both the MMA and the *Coleman* factors clearly contemplate that the conduct occurs within the context of a patient-physician relationship. The supreme court examined who constitutes a patient in this context in *Delcambre*, 893 So.2d 23. The claimant in that case was a volunteer blood donor who suffered injuries to his arm while having blood drawn. In finding that the blood donor was not a patient,[3] the

---

[3] After the supreme court decided *Delcambre*, 893 So.2d 23, in 2005, the legislature amended La.R.S. 40:1229.41 in 2006 to include blood donors and the donation of blood or blood components in the definitions of "patient," "health care," and "malpractice."

5

supreme court looked to whether the claimant was receiving any medical care from the health care provider. The supreme court found that because the blood donor was not relying on the provider "to diagnose or inform him of any physical condition," the donor was not receiving medical care from the provider. *Id.* at 29.[4]

Similarly, in *Clark v. Baird*, 97-1025 (La.App. 4 Cir. 5/20/98), 714 So.2d 840, *writ denied*, 98-1684 (La. 10/9/98), 726 So.2d 31, the fourth circuit addressed whether the husband of a patient who, due to her doctor's negligence, was infected with Hepatitis C was a "patient" for the purposes of the MMA. The fourth circuit concluded that the husband was not a patient, stating "[h]e neither received health care from the defendants, nor did he have an express or implied contract with the defendants. He had no relationship with the defendants whatsoever." *Id*. at 845. *See also Reed v. St. Charles Gen. Hosp.*, 01-1148 (La.App. 4 Cir. 3/27/02), 815 So.2d 319 (discussing whether a hospital patient's wife's claim was subject to the MMA in the context of an exception of prescription).

An exception of prematurity is based on the facts that existed at the time the lawsuit was filed. *Blevins*, 959 So.2d 440. Here, the evidence entered in support of the exception are the allegations made in the petition, the memorandums and exhibits filed in support of, and in opposition to, the exception of prematurity, and the exhibits filed at the hearing. Therein, the Atkinsons allege that only Gabriel received

---

[4] Even if a doctor/patient relationship exists, under certain fact patterns, the alleged tortious conduct may not arise "in the context of" that relationship, and does not, therefore, constitute medical malpractice. *See Blevins*, 959 So.2d 440 (analyzing the *Coleman* factors and finding that certain claims for injuries from an improperly secured hospital bed fell under general tort law and not medical malpractice, in part, because they did not arise in the context of a physician/patient relationship or within the scope of activities the hospital is licensed to perform); *Price v. City of Bossier City*, 96-2408 (La. 5/20/97), 693 So.2d 1169, 1173 (an employer-mandated drug screen given to an employee who was treated for a non-drug related work injury was not given in the course of medical treatment as the employee was not, with regard to the drug screen, relying on the provider to "inform her of a physical condition of which she was unaware").

treatment from Dr. Young. They do not allege that they ever sought treatment for Luke, the subject of this litigation, from Dr. Young, or that he ever received any kind of treatment whatsoever from Dr. Young. Notably, the plaintiffs' letter requesting a medical review panel specifically refers to Luke as a "non-patient" of Dr. Young. Further, Dr. Young does not allege that he ever treated Luke or that the Atkinsons ever consulted him about treatment for Luke. Thus, based on the evidence submitted in support of the exception, we find that Dr. Young did not establish that Luke *received* any health care services from him.

Therefore, the only basis upon which Luke could have been a "patient" of Dr. Young under these circumstances is that Luke "should have" received treatment from Dr. Young, based on Dr. Young's alleged failure to test Gabriel for X-ALD and his alleged subsequent failure to recommend testing for Gabriel's male siblings, including Luke. We note that in *Price*, 693 So.2d at 1173, the supreme court held that the negligent act or omission must have occurred "during the patient's medical care, treatment or confinement." Further, cases referenced herein addressing whether someone who "should have" received treatment is a patient under the MMA generally contemplate a situation where the claimant has sought diagnosis or treatment from a health care provider and the provider has, for whatever reason, failed to provide the treatment.[5]

_____

[5] *See McLemore v. Westwood Manor Nursing & Rehabilitation, L.L.C.*, 37,450 (La.App. 2 Cir. 8/20/03), 852 So.2d 1170 (After a nursing home resident was allegedly dropped by staff and then was not treated for injuries sustained as a result of the fall, the claimant filed suit. The second circuit held that because the resident should have received treatment as a result of the fall, the claim was subject to the MMA.); *Bolden v. Dunaway*, 97-1425 (La.App. 1 Cir. 12/28/98), 727 So.2d 597, *writ denied*, 99-275 (La. 3/26/99), 739 So.2d 801 (The claimant alleged that, after she was prepped, her surgeon refused to perform the surgery after a miscommunication regarding whether payment had been provided. The first circuit, although not stating that the claimant "should have" received services from the surgeon, found that the suit was subject to the MMA.). *See also Leonard v. State, Dep't of Health & Hospitals*, 42,893 (La.App. 2 Cir. 1/30/08), 975 So.2d 662, *writ denied*, 08-0805 (La. 6/6/08), 983 So.2d 920 (Group home's delay in obtaining treatment for resident who ingested

7

That is not the case in this situation. Based on the evidence submitted at the hearing on the exception of prematurity, as discussed above, the Atkinsons did not seek Dr. Young's professional services for the diagnosis or treatment of Luke. Further, Dr. Young's failure to test Luke for X-ALD, the alleged negligent act or omission, did not occur during any "medical care, treatment or confinement" that related to Luke. La.R.S. 40:1229.41(A)(9). Thus, we find that Luke was not a person who "receive[d] or should have received health care" as contemplated by the MMA. La.R.S. 40:1229.41(A)(15).

Whether a Contractual Relationship Existed Between the Atkinsons and Dr. Young for the Treatment of Luke

On appeal, the appellees additionally argue that, because the Atkinsons had a contractual relationship with Dr. Young for the treatment of Gabriel, that contract extends to the treatment of Luke.[6] Louisiana Civil Code Article 1906 defines a contract as "an agreement by two or more parties whereby obligations are created, modified, or extinguished."

In *Hutchinson v. Patel*, 93-2156 (La. 5/23/94), 637 So.2d 415, the supreme court noted a difference between an implied contractual relationship and the imposition of a duty of care with regard to a non-patient. The claimant in that case was a psychiatric patient's wife who was paralyzed after her husband shot her and then killed himself. She sued her husband's psychiatrist after he failed to warn her about her husband's threats of physical violence. The supreme court held that the

---

fatal dose of Seroquel was not subject to the MMA because, in part, there was no patient-physician relationship. The relationship was "more akin to the relationship between a young student and his teacher.")

[6] We note that, although they mentioned the contractual question in their arguments at the trial court, the Atkinsons argued that the alleged damages to Luke occurred outside the context of a physician/patient relationship.

"alleged 'failure to warn' plaintiff does not constitute 'malpractice' as defined in the [MMA] because plaintiff was not Dr. Patel's patient pursuant to an express or implied contract establishing a physician-patient relationship." *Id.* at 422. *See also Guidry v. Garrett*, 591 So.2d 806 (La.App. 3 Cir. 1991), *writ denied*, 592 So.2d 1339 (La.1992).

The evidence submitted in support of the exception of prematurity includes the petition, the memorandums and exhibits filed in support of, and in opposition to, the exception of prematurity, and the exhibits filed at the hearing. In their pleadings, the Atkinsons do not base their theory of liability on a contractual relationship allegedly extending to the treatment of Luke. Instead, the Atkinsons base liability on Dr. Young's alleged breach of the standard of care, which, they contend, included testing Gabriel for X-ALD and, if the result was positive, testing other male members of the Atkinson family for the genetic disorder. Dr. Young does not allege that the contractual relationship between the Atkinsons and Dr. Young contemplated anything other than the treatment of Gabriel. Like the Atkinsons, Dr. Young contends that any liability on his part stems from a breach of the duty of care in his treatment of Gabriel. Thus, we find the appellees' argument concerning an alleged contractual relationship extending to the treatment of Luke unpersuasive.

The burden of proving the exception lies on the exceptor. *Blevins*, 959 So.2d 440. As discussed above, the evidence submitted in support of the exception of prematurity establishes that the Atkinsons only consulted Dr. Young "to diagnose or inform [them] of any physical condition" with regard to Gabriel, not Luke. Further, the evidence reveals that the Atkinsons did not request that Dr. Young treat Luke, nor is there any indication that the contractual relationship for the treatment of Gabriel

9

contemplated that Dr. Young would be responsible for Luke's treatment, if any. Given that we must construe the provisions of the MMA strictly, we find that Dr. Young did not meet his burden of establishing that a "physician/patient" relationship existed with regard to Luke, based on the evidence submitted to the trial court. *See Blevins*, 959 So.2d 440. Therefore, we find the trial court erred in determining that Luke was a patient of Dr. Young.[7]

Applicability of the MMA to Non-Patients

Although a physician/patient relationship does not exist, a litigant's claim may still be subject to the provisions of the MMA. The supreme court has interpreted the MMA to apply to claims brought by "a patient, a patient's representative on the patient's behalf, or other persons having claims arising from injuries to or death of a patient." *Hutchinson*, 637 So.2d at 422. However, claims which do not arise from injuries to or the death of a patient are excluded from coverage under the MMA. *Id.*

In *Trahan v. McManus*, 97-1224 (La. 3/2/99), 728 So.2d 1273, although finding that the plaintiffs in that case could not recover bystander damages, the supreme court stated that claims for mental anguish could fall under the purview of the MMA, provided that the claims arose from the injury to or death of a patient. The

_____

[7] Although our holding in this case is based on Louisiana's medical malpractice scheme and jurisprudence, other states have found that immediate family members are not "patients" for the purposes of a medical malpractice action based on failure to disclose or failure to test for a genetic disorder. *See Safer v. Estate of Pack*, 677 A.2d 1188 (N.J. Super. Ct. App. Div. 1996) (noting that the trial court found that a daughter, who was diagnosed with the same genetically-linked cancer as her father, sued her father's physician for failure to warn that his immediate family may have inherited the disease, was not a "patient" for purposes of medical malpractice); *Pate v. Threlkel*, 661 So.2d 278 (Fla. 1995) (The plaintiff was diagnosed with the same genetically-linked cancer as her mother and subsequently sued her mother's physicians for failure to notify her mother that her children should be tested for the disease. The Florida Supreme Court noted that the trial court found that the plaintiff was not a "patient" for purposes of medical malpractice.); *Richardson v. Rohrbaugh*, 857 S.W.2d 415 (Mo. Ct. App. 1993) (A "family physician" was treating the plaintiffs' eldest child and mis-diagnosed the child as not having a genetic disorder. After the mother subsequently became pregnant and gave birth to another child with the same disorder, she brought suit. The Missouri Court of Appeals held that the physician/patient relationship was between the physician and the eldest child, not the physician and the mother.)

first circuit expounded on this principle in *Bolden v. Dunaway*, 97-1425 (La.App. 1 Cir. 12/28/98), 727 So.2d 597, *writ denied*, 99-275 (La. 3/25/99), 739 So.2d 801. One of the plaintiffs in that case was the husband of a patient whose surgeon refused to perform surgery on her after she had been prepped for surgery. The first circuit held that the husband's claims, which included intentional infliction of emotional distress, were subject to the MMA because they were "clearly derivative" of the injuries to his wife.

In *Jones v. Scribner*, 30,693 (La.App. 2 Cir. 6/24/98), 716 So.2d 905, the plaintiff was injured in a horse-and-buggy/automobile accident. He sued the other driver's ophthalmologist, alleging that the ophthalmologist had committed malpractice in certifying that the other driver's vision was sufficient for him to drive. The second circuit noted that, although the plaintiff's injuries might be related to the ophthalmologist's negligence, the plaintiff's injuries did not "arise" from any injury to the other driver, i.e., the ophthalmologist's patient. Thus, the second circuit affirmed the trial court's denial of an exception of prematurity, finding that the claim was "a non-patient claim which does not arise from injuries to or death of [the ophthalmologist's] patient[.]" *Id*. at 906.

The plaintiffs are not claiming, at least in this litigation, that the damages that Luke suffered were in the nature of bystander damages or loss of consortium. Luke's claims are medical in nature. Although Luke's claims are *related* to Dr. Young's alleged breach of the duty of care with regard to Gabriel, they do not *arise* from the alleged injury to Gabriel and are thus not "derivative" of Gabriel's claim. They are similar to the claims in *Clark*, 714 So.2d 840, and *Reed*, 815 So.2d 319, where the claimants suffered injuries that, although the damages stemmed from an act of alleged

11

medical malpractice, they occurred independently from the alleged malpractice. Thus, we find that the claim is not "derivative" for the purposes of the MMA.

*Exception of Prematurity*

In order to grant the exception of prematurity, the claim must be subject to the MMA. In *Coleman*, 813 So.2d 303, the supreme court enumerated a list of factors to be considered in determining whether alleged misconduct by a qualified health care provider constitutes "malpractice" under the MMA. The *Coleman* factors include a requirement that the alleged injury occur in the context of a physician/patient relationship. We have determined that the trial court erred in finding that Luke was a patient of Dr. Young. Further, although Luke's brother Gabriel was a patient of Dr. Young, we have determined that Luke's claim is not "derivative" of the alleged injury to Gabriel. Thus, Luke's claims do not comport with the *Coleman* factors and are not subject to the provisions of the MMA.

For these reasons, we reverse the grant of the exception of prematurity and remand for further proceedings.

**DECREE**

For the foregoing reasons, the trial court's grant of the exception of prematurity is reversed. One-half of the costs of this appeal are assessed to the plaintiffs/appellees, Mickey Atkinson and Amy Atkinson, individually and on behalf of their minor children, Luke Allen Atkinson, Gabriel Allen Atkinson, and Evan Kane Atkinson. The remaining one-half of the costs of this proceeding are assessed to the defendants/appellees, Healthcare Indemnity Insurance Company and Dr. Martin C. Young.

**REVERSED AND REMANDED.**