HAYNES, Circuit Judge,
joined by DENNIS, ELROD and GRAVES, Circuit Judges, concxxxring and dissenting:
Our prior decision in Smallwood v. Illinois Central Railroad Co., 385 F.3d 568 (5th Cir.2004) (en banc), has garnered much confusion and criticism.[1] Instead of *141 clarity, the majority opinion unnecessarily adds yet , another layer to the already expansive view of Smallwood. Properly applied, the Smallwood test would result in a conclusion that the federal courts lack jurisdiction over this ease. From the majority opinion’s determination that we have jurisdiction, I respectfully dissent. •
Under the improper joinder doctrine, a court should disregard the citizenship of non-divérsé defendants where “there is no reasonable basis for predicting that the plaintiff might establish liability '... against the in-state defendant[s].” Badon v. RJR Nabisco Inc., 224 F.3d 382, 390 (5th Cir.2000); see Smallwood, 385 F.3d at 573. In other words, a defendant must “demonstrate[ ] that there is no possibility of recovery by the plaintiff against an instate defendant.” Smallwood, 385 F.3d at 573. The Manufacturing Defendants argue and the majority opinion agrees that the cash against the Medical Defendants is premature in light of what was then a still-pending (since resolved)' medical review panel proceeding and, therefore, there is “no reasonable basis” to predict liability against the Medical Defendants.
The majority opinion correctly states that Louisiana has an administrative scheme governing medical malpractice claims: the Louisiana Medical Malpractice Act (“LMMA”). The LMMA governs claims for “any unintentional tort or any breach of contract” brought against a qualified “health care provider.” La.Rev.Stat. Ann. §§ 1231.1, 1231.8. The majority opinion notes that the LMMA requires a plaintiff to submit a claim to a medical review panel before bringing suit. Id. § 1231.8(B)(l)(a)(i) (“No action against a health care provider covered by this Part ... may be commenced in any court before the claimant’s proposed complaint has been presented to a medical review panel established pursuant to this Section.”).
Importantly, for our purposes, the panel’s “sole duty” is “to express its expert opinion as to whether or not the evidence supports the conclusion that the defendant or defendants acted or failed to act within the appropriate standards of care,” by rendering one or more of three “expert opinions”:
(1) The evidence supports the conclusion that the defendant or defendants failed to comply with the appropriate standard of care as charged in the complaint.
(2) The evidence does not support the conclusion that the defendant or defendants failed to meet the applicable standard of care as charged in the complaint.
(3) That there is a material issue of fact, not requiring expert opinion, bearing on liability for consideration by the court.
Id. § 1231.8(G).
Further, the parties can waive the medical review process in several ways:
1. Most simply, “[b]y agreement of all parties, the use of the medical review panel may be waived.” Id. § 1231.8(B)(1)(c); see also Delcambre v. Blood Sys., Inc., 893 So.2d 23, 27 (La.2005). . .
2. Parties may also bypass the panel review process if they have “validly . agreed” to submit the claims “to a lawfully binding arbitration procedure.” La.Rev.Stat. Ann. § 1231.8(A)(1)(a).
*142 3. If the parties or the medical review panel fail to appoint an attorney chairperson and notify the medical review board within one year from when the claim was filed, they have , waived the use of the panel. Id. '§ 1231.8(A)(2)(c).
4. A lawsuit may proceed despite any claim- before a medical review panel '• if the panel fails to render a decision within one year of the selection of the attorney chairperson,- unless the parties receive a court-ordered extension for good cause. Id. § 1231.8(B)(1)(b).
5. Additionally, a health care provider can circumvent the medical review process by filing a lawsuit and challenging the claimant’s malpractice claim as prescribed or for failure to state a claim under Louisiana law. Id. § 1231.8(B)(2)(a)-(b) (noting defendants may claim “no right of action” under Louisiana’s Code of Civil Procedure; Article 927(6), or' as prescribed by the statute of limitations for medical malpractice in La.Rev. Stat. Ann. § 9:5628).
Against this backdrop, we examine whether Plaintiff Flagg had “no possibility of recovery” against the Medical Defendants when he filed his complaint in state court. Smallwood, 385 F.3d at 573. First, the face of the complaint did not evidence any “failure to exhaust.” Absent a jurisdictional nature to “failure to,exhaust,” we treat such failures to exhaust as affirmative defenses, not jurisdictional prerequisites.[2] See, e.g., Young v. City of Houston, 906 F.2d 177, 180 (5th Cir.1990) (holding that the plaintiffs failure to first exhaust remedies before the EEOC was not a jurisdictional prerequisite to suit in federal court).[3] For example, in the context of the Prison Litigation Reform Act, we have followed the Supreme Court’s guidance in Jones v. Bock, 549 U.S. 199, 212, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007), and held that exhaustion is an affirmative defense. See, e.g., Cantwell v. Sterling, 788 F.3d 507, 508-09 (5th Cir.2015); Coleman v. Sweetin, 745 F.3d 756, 763 (5th Cir.2014).
Similarly, Louisiana treats failure to comply with the LMMA as a defensive issue, not a jurisdictional prerequisite. See Delcambre, 893 So.2d at 27; Gele v. Binder, 904 So.2d 836, 837-38 (La.Ct.App. *143 2005). This makes particular sense here since the parties can waive the LMMA requirements. On the face of the plaintiffs pleading, then, there was nothing indicating “no possibility of recovery*’ against the Manufacturing Defendants who were alleged to have manufactured defective toe implants that the in-state Medical Defendants improperly implanted. In other words, the pleadings showed a garden-variety ease against in-state and out-of-state defendants whose separate allegedly tortious acts combined to cause a single harm to the plaintiff.
Unusually for an en banc case, the majority opinion engages in a factual analysis of the circumstances, presented here and concludes that the district court properly relied on Flagg’s concession in his motion to stay that he failed to exhaust his medical malpractice claims before filing suit. In turn, the majority opinion concludes that this case falls within the Rule 12(b)(6)-type analysis approved by Smallwood. First, Smallwood described the “Rule 12(b)(6)-type analysis” as permitting courts to look “at the allegations of the complaint to determine whether the complaint states a claim____” Id. at 573 (emphasis added). Second, allowing courts to rely on concessions included in motions filed in the federal distinct court .poses more questions than it resolves. Left unanswered is the future LMMA case when a plaintiff does not concede anything by moving to remand. Thus, this en banc opinion really only answers one question in one case.
The majority opinion also contends that it is appropriate to find improper joinder based on a non-jurisdictional affirmative defense, like one involving the statute of limitations. See Boone v. Citigroup, Inc., 416 F.3d 382, 392 (5th Cir.2005). Certainly, since Smallwood allowed a “Rule 12(b)(6)-type analysis” and piercing the pleadings, our court has. .allowed delving into such non-jurisdictional affirmative defenses as part of the ¡improper joinder inquiry. See id.; Smallwood, 385 F.3d at 573. That does not mean this approach is correct or easily administrable. In fact, the Supreme Court recently clarified that even mandatory rules under state law are not jurisdictional unless those statutes explicitly “speak in jurisdictional terms.” See V.L. v. E.L., 577 U.S. —, 136 S.Ct. 1017, 1021, 194 L.Ed.2d 92 (2016) (per curiam). The exhaustion requirement under the LMMA is not explicitly jurisdictional (to the contrary it is not jurisdictional), just like the mandatory requirement the Court rejected as non-jurisdictional in V.L. As an en banc court, we should clarify the improper joinder doctrine and hew it more closely' to the Supreme Court’s instruction to avoid treating merits issues as jurisdictional. See, e.g., id.; Arbaugh v. Y & H Corp., 546 U.S. 500, 513-16, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006). Instead, the majority opinion muddies the waters with -numerous qualifiers and expands a standard that does not fully respect our role as courts of limited jurisdiction.
Becausé nothing on the face of the complaint and nothing in the LMMA show that there is “no possibility of recovery” against the in-state Medical Defendants, the panel opinion properly found federal diversity jurisdiction lacking. See Flagg v. Stryker Corp., 801 F.3d 456, 462-63 (5th Cir.2015); Smallwood, 385 F.3d at 573. The en banc majority opinion contends that the panel opinion was not faithful to our decisions in Melder v. Allstate Corp., 404 F.3d 328 (5th Cir.2005), and Holder v. Abbott Laboratories, Inc., 444 F.3d 383 (5th Cir.2006). Of course, the en banc court has the right to overrule prior precedents of this court and should do so to the extent those precedents support exercising jurisdiction here. But, as the panel opinion explained, it is not necessary .to overrule Melder and *144 Holder to conclude that jurisdiction is lacking here. See Flagg, 801 F.3d at 460-62.
Melder involved a comprehensive, adjudicative administrative process to challenge rates before the Louisiana Insurance Rate Commission (“LIRC”), which evaluates and pre-clears insurance rates after determining whether the rates are' reasonable and not unfairly discriminatory.[4] 404 F.3d at 330-32. We repeatedly emphasized the comprehensiveness of the administrative scheme that, in that case, would actually result in an' adjudication of the plaintiffs’ claim. Id. Holder also involved a comprehensive adjudicatory scheme under the National Childhood Vaccine Injury Act, which requires full judgment on the merits by the United States Court of Federal Claims with appeal to the Court of Appeals for the Federal Circuit. 444 F.3d at 387-89 (quoting 42 U.S.C. §§ 300aa-33(5) &-ll(a)(l)); see also 42 U.S.C. § 300aa-12(f),
All agree that the LMMA is not such a comprehensive administrative scheme designed to adjudicate a plaintiffs malpractice claims. It results only in an expert opinion that is admissible in the subsequent lawsuit but not binding on the parties or the court and not self-effectuating. See La.Rev.Stat. Ann. § 1231.8(G), (H) (noting the “report of the expert opinion reached by the medical review panel shall be admissible as evidence” in any subsequent lawsuit, but “shall not be conclusive,” and that the panel has the “sole duty to express its expert opinion” as to whether the applicable standards of care were met). In other words, the medical review panel will not adjudicate Flagg’s claim at all; it will simply provide evidentiary support for one side or the other. See La.Rev. Stat. Ann. § 1231.8(H). The majority opinion finds this distinction unpersuasive because no court has ever relied on it.[5] See.Majority Opinion at 138-39.
The reason no other circuit has relied on this distinction is that no other circuit has gone as far as the majority opinion here.[6] The trend is quite different. The Supreme Court has instructed us not to conflate the merits of a case and jurisdiction. See Arbaugh, 546 U.S. at 513-16, 126 S.Ct. 1235; V.L., 136 S.Ct. at 1021-22. Following that instruction, other circuits facing exhaustion defenses have properly dealt with those defenses on the merits, rather than as a matter of jurisdiction. See, e.g., Vazquez-Rivera v. Figueroa, 759 F.3d 44, 46-49 (1st Cir.2014); Hildebrand v. Allegheny Cty., 757 F.3d 99, 103-04, 111-13 (3d Cir.2014), cert. denied, — U.S. —, *145 135 S.Ct. 1398, 191 L.Ed.2d 359 (2015); Richter v. Advance Auto Parts, Inc., 686 F.3d 847, 850-51 (8th Cir.2012)[7]; cf. Hunter v. Philip Morris USA, 582 F.3d 1039, 1045 (9th Cir.2009)[8] (concluding, no improper joinder occurred and that it was error to maintain jurisdiction and dismiss the case based on a “merits” defense of preemption). A few courts have stated this more plainly: “[T]o determine the absence of jurisdiction is error when the ruling is based upon an affirmative defense.” Holley Equip. Co. v. Credit All. Corp., 821 F.2d 1531, 1535 (11th Cir.1987); Salis v. Am. Exp. Lines, 331 Fed.Appx. 811, 814 (2d Cir.2009) (“The district court’s reliance on an affirmative defense to determine that the amount in controversy was insufficient to support diversity jurisdiction was improper.”). The decision to adjudicate an affirmative defense that, will (and did) evaporate over time under the guise of a jurisdictional analysis is the result of our own court’s unnecessary expansion of Smallwood.[9]
Nothing about the plaintiffs pleadings or the LMMA shows that Flagg has no possibility of recovery against the Medical Defendants. Indeed, we are now at the point where the LMMA proceedings have concluded and Flagg has sued the Medical Defendants in state court. While this reality might not technically moot the argument regarding jurisdiction, it underscores that even viewed at the time of removal, the “possibility of recovery” was very real and has now come to the point where “recovery” will be judged on its merits. Thus, even using the Smallwood approach of piercing the pleadings to peek at the facts, see 385 F.3d at 573-74, we find no facts that negate recovery — only a temporary hurdle, since cleared.
The LMMA scheme is not the kind of comprehensive administrative scheme we have cited in allowing a district court to discount the citizenship of non-diverse parties. The majority opinion greatly expands Smallwood and unnecessarily extends Melder and Holder beyond their stated reach to encompass a non-adjudicative, non-comprehensive, waivable process since concluded in this case. I respectfully dissent from the en banc court’s decision that federal diversity jurisdiction .exists here.
However, given that conclusion, I concur in the majority opinion’s determination to remand the merits of the appeal from the *146 Rule 12(b)(6) dismissal to the original panel for determination.

. See, e.g., Walton v. Tower Loan of Miss., 338 F.Supp.2d 691, 694 & n. 2 (N.D.Miss.2004) (criticizing Smallwood’s standard and stating that the division between the majority opinion and dissenting opinions in Smallwood "puts - district judges in a difficult position” regard- - ing the proper standards to apply); James M. Underwood, From Proxy to Principle: Fraudulent Joinder Reconsidered, 69 Alb. L. Rev. 1013, 1086, 1092-94. (2006) (criticizing our approach as a "flawed” proxy that "fails to implement any underlying purpose behind federal diversity jurisdiction” and which is ".tantamount to authorizing federal courts to *141 adjudicate the merits of state law claims between nondiverse citizens”); Matthew J. Richardson, Clarifying and Limiting Fraudulent Joinder, 58 Fla. L. Rev. 119, 150-54, 165 (2006) (criticizing our approach and arguing that "[fraudulent joinder review should be more limited in scope than it is in the Fifth Circuit, [which] applies the doctrine most expansively”).

. The majority opinion suggests that its solution respects state legislatures by treating federal and state exhaustion requirements similarly. See Majority Opinion at 139 & n. 29. However, the key question in a diversity case is whether exhaustion is a merits-based affirmative defense or a jurisdictional prerequisite. In one of the cases cited by the majority opinión, we recognized the difference between the affirmative defense.of exhaustion and a jurisdictional prerequisite and declined to dismiss the case for lack of jurisdiction. See M.L. v. Frisco Indep. Sch. Dist., 451 Fed.Appx. 424, 427 (5th Cir.2011). The other case cited dismissed an ERISA plaintiff's suit for failure to exhaust remedies, without discussing jurisdiction. See Harris v. Trustmark Nat’l Bank, 287 Fed.Appx. 283, 288 (5th Cir.2008). We have refused to treat other statutory requirements' as jurisdictional in the ERISA context and would likely treat the failure tó exhaust in the same way. See, e.g., Smith v. Reg’l Transit Auth., 756 F.3d 340, 345-47 (5th Cir.2014); ACS Recovery Servs., Inc. v. Griffin, 723 F.3d 518, 523 (5th Cir.2013) (en banc).

. Our court has sometimes inconsistently applied the rule that a failure to exhaust under Title VII is not a jurisdictional issue, but under our rule of orderliness we are bound to follow Young's standard. See United States v. Alcantar, 733 F.3d 143, 145-46 (5th Cir.2013). Recent Supreme Court precedent instructing us not to conflate the merits and jurisdiction supports this approach. See, e.g., Arbaugh v. Y & H Corp., 546 U.S. 500, 513-16, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006); see also Shapiro v. McManus, — U.S. —, 136 S.Ct. 450, 455-56, 193 L.Ed.2d 279 (2015).

. Additionally, the record did not show that the plaintiffs in Melder filed for administrative remedies with LIRC at all, and the plaintiffs did not respond to the exhaustion issue in their briefing, except to claim this court could not decide it, 404 F.3d at 332.

. The majority opinion also claims this distinction is not easily administrable. Yet, it is easy enough to see that the LMMA is not a comprehensive, adjudicative scheme. Furthermore, if a bright-line, easily administrable standard is the goal, the majority opinion does not approach it. It creates new exception-riddled rules based on the particular facts of this case, allows courts to use a Rule 12(b)(6)-type analysis that'looks beyond the complaint and may sometimes delve into the merits through a piercing of the pleadings— although we have not clarified when such piercing is appropriate — and ignores the Supreme Court’s recent guidance about clearly and cleanly separating jurisdictional issues from merits defenses like exhaustion. See V.L., 136 S.Ct. at 1021-22; Arbaugh, 546 U.S. at 513-16, 126 S.Ct. 1235. As an en banc court, we have the authority and duty to clarify, even if it is necessary to overrule prior precedent to the extent of any inconsistency.

.See also Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 160-62, 130 S.Ct. 1237, 176 L.Ed.2d 18 (2010); Steel Co. v. Citizens for a Better Env’t, 523 U.S. 83, 89-90, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

. See also Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393-95, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (holding deadlines for timely filing claims with the EEOC were not jurisdictional); Irwin v. Dep’t of Veterans Affairs, 498 U.S. 89, 92-96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (holding a Title VII filing deadline was not jurisdictional); Coke v. Gen. Adjustment Bureau, 640 F.2d 584, 588-89, 595 (5th Cir.1981) (en banc) (following a trend in Supreme Court decisions holding that the Title VII EEOC filing deadline was not jurisdictional and holding that a 180-day notice requirement under the Age Discrimination in Employment Act, 29 U.S.C. § 626(d)(1), was likewise not jurisdictional).

. The Ninth. Circuit relied, in part, on Smallwood in arriving at this result, noting language in Smallwood that distinguished between “an attack on the merits” of a plaintiffs case and other situations involving no possibility of recovery under state law. See 582 F.3d at 1044-45 (quoting Smallwood, 385 F.3d at 574).

.We have struggled, in Smallwood and otherwise, to formulate a test to determine whether any basis for relief exists on a non-diverse state-law claim. Formulating the proper test is problematic, since the "judicially created . doctrine” of improper joinder can involve peeking into the merits of state-law claims in cases where the parties facially are. not completely diverse. See Murriel-Don Coal Co. v. Aspen Ins. UK Ltd., 790 F.Supp.2d 590, 594-97 (E.D.Ky.2011) (citation omitted).